**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:     (619) 798-2006
Facsimile:     (619) 343-2789

**Counsel for Plaintiffs**

**BRAUNHAGEY & BORDEN LLP**
J. NOAH HAGEY (262331)
*hagey@braunhagey.com*
MATTHEW BORDEN (214323)
*borden@barunhagey.com*
DAVID KWASNIEWSKI (281985)
220 Sansome Street, Second Floor
San Francisco, CA 94104
Telephone:     (415) 599-0210
Facsimile:     (415) 276-1808

**Counsel for Defendants**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

SABRINA SILVA and NANCY SCHIER, on behalf of themselves and all others similarly situated,

        Plaintiffs,

    v.

B&G FOODS, INC. and B&G FOODS NORTH AMERICA, INC.,

        Defendants.

Case No: 4:20-cv-137-JST
Pleading Type: Class Action

**JOINT DISCOVERY LETTER RE PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION AND INTERROGATORIES**

**Discovery Matter for the Hon. Joseph C. Spero**

Counsel for Plaintiffs Sabrina Silva and Nancy Schier ("Plaintiffs") and Defendants B&G Foods, Inc. and B&G Foods North America, Inc.'s ("Defendants") (collectively the "Parties") hereby submit this Joint Letter. Parties met and conferred via Zoom on October 23, 2020 and December 2, 2020.

## SUMMARY

### I.  Plaintiffs' Position

More than five months after Plaintiffs served requests for production, Defendants have not produced any documents or provided substantive answers to any interrogatories. They also repudiated their agreement to start producing documents by November 23. Letters, zoom meetings, telephone calls, and the discovery conference with the Court have not resulted in any meaningful progress.

### II.  B&G Foods's Position

The Court stayed discovery until September 8, 2020, when the Court dismissed all but one of Plaintiffs' claims. Plaintiffs did not serve new discovery tailored to the remaining claim, and instead insisted that B&G Foods immediately respond to all the discovery requests they had previously propounded, many of which sought materials that were no longer relevant.

B&G Foods timely responded to Plaintiffs' discovery requests on October 12, 2020. On October 23, the parties met and conferred by videoconference for over an hour. On the videoconference, the parties worked through many of the "issues" listed below by Plaintiffs. B&G Foods never promised to produce any documents within 30 days as Plaintiffs assert, especially given that Plaintiffs requests seek materials going back almost a decade, and B&G Foods has agreed to search all its records to try to locate responsive materials.

Two days before Thanksgiving, Plaintiffs sent a letter demanding the immediate production of documents. The day before Thanksgiving, Plaintiffs submitted an unauthorized discovery letter without first meeting and conferring. In response, the Court ordered the parties to file a joint letter.

As discussed below, to the extent that they are not seeking relief on issues that were already resolved in the previous meet and confer, Plaintiffs' requests are not tailored to the claims remaining in this case. As to the timing of production, B&G Foods is still in the process of collecting materials. After they are collected, they will be reviewed and produced, as B&G Foods has already agreed to do.

Prior to the submission of this letter, B&G Foods again met and conferred via videoconference with Plaintiffs, provided them with an update on its ongoing document collection efforts, and offered to discuss the terms of an ESI Protocol to further streamline document production. Plaintiffs refused to have any such discussion stated they preferred to proceed with a motion to compel. This afternoon, Plaintiff sent its half of the letter that the Court ordered the parties to file on pleading paper in a length

that exceeds the Court's page limits for joint letter briefs.  In its portion of this filing, B&G Foods has remained within the Court's page limits but has not had sufficient time to reformat Plaintiffs' submission into joint letter form. B&G Foods understands that the Court requested the parties to submit a joint letter, and that these letters are normally limited to 5 pages, Standing Order ¶ 9, and apologizes for the submission of this non-conforming filing.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Plaintiffs' Position

This case was filed on January 7, 2020. On July 1, Plaintiffs served their First Sets of Interrogatories and Requests for Production on each Defendant. Defendants served timely objections to these requests on August 3.

On August 21, the Court granted Defendants' unopposed motion to stay discovery pending a ruling on Defendants' Motion to Dismiss. See Dkts. 33-34.

On September 8, the Court granted the motion to dismiss as to Plaintiffs' "trans fat use" theory, but not the unlawful nutrient content claim of "0g Trans Fat!" while adding trans fat to the taco shells. Dkt. 35. This ended the discovery stay.

On September 9, Plaintiffs sent a detailed letter addressing Defendants' objections, and requesting a telephone conference to confer further. That same day, Plaintiffs sent the N.D. Cal. Model Protective Order and requested that Defendants stipulate to it. To date, Defendants have not responded.

On September 18, Plaintiffs sent a reminder e-mail again asking Defendants to provide a time to confer on the requests. Like the first request, the second request received no response.

On September 22, Plaintiffs sent their third request to confer, to which Defendants finally provided the date and time of September 28 at 2pm.

On September 28, in advance of the call, Plaintiffs re-sent their September 9 request relating to the protective order stipulation.

On September 28, the Parties met and conferred telephonically. The call did not result in any issue being resolved. While Defendants stated they would "supplement" their August 3 objections, they declined to commit to producing any actual documents by any date.

In the September 28 call, Defendants also would not commit to providing any substantial interrogatory responses.

On October 12, Defendants' served what they called "supplemental responses," which contained all the same objections from Defendants' August 3, 2020 response, with only minor additions. On

October 16, Plaintiffs sent a letter noting the Second Responses are not in compliance with Judge Spero's Civil Standing Orders. Defendants have never remedied this.

Per Judge Spero's Order, Dkt. 44, the Parties held status conference on October 23, 2020, and a subsequent meet and confer via zoom. During the call, Defendants, only after much pressing, finally committed to start producing documents "within 30 days," which was November 23. Plaintiffs sent a detailed confirmatory letter the following week.

When Defendants failed to produce any documents, nor provide answers to the interrogatories, Plaintiff inquired why. They now deny making such agreement

## II.   B&G Foods's Position

This case challenges B&G Foods's taco shell labels that were changed in 2015. Plaintiffs originally alleged two types of claims.  The first type of claim is what the Court denominated "use" claims. These claims asserted that B&G Foods had unnecessarily used trans fat, which comes from trace levels of partially hydrogenated oils ("PHOs") in its taco shells.  Because the United States Food and Drug Administration allowed the use of PHOs and trans fats in foods through mid-2018, and B&G Foods had removed trans fat and PHOs from its taco shells in 2015, long before the FDA deadline, Judge Tigar dismissed all of Plaintiffs' use claims.  (Dkt. No. 35.)

The second claim made by Plaintiffs is that the language "0 grams trans fat" on the front of the label caused them to buy the accused taco shells.  This language was removed from the product labels in 2015 – more than four years *before* this lawsuit was filed.  The FDA requires food companies to round down the amount of nutrients to the nearest whole number in the Nutrition Fact panel.  21 C.F.R. § 101.9(c)(2)(ii). B&G Foods properly stated "0 grams trans fat" in its Nutrition Facts, but the Court declined to dismiss Plaintiffs' claims based on the statement of the front of the pack. That is the only claim remaining in the case.  (Dkt. No. 35.)

As a result of the Court's ruling, the claims in this case only relate to consumer purchases before the April 2015 label change.  Plaintiffs have filed this case as a putative class action, which extends the relevant period of discovery four years back from then.

## III.   Plaintiffs' Substantive Position

Plaintiffs believe their letter dated October 28, confirming what they believed were compromises, represent reasonable compromises on the issues in dispute. A substantial aspect was that Defendants actually produce documents and answer interrogatories, which they have not. The letter and Defendants' supplemental responses are attached to this letter. Defendants repudiated the agreement

after the date had passed. In Plaintiffs' view, the Court should order Defendants to immediately comply with their agreement in the letter.

### A.   Defendants' "General Objections" Are All Invalid

Defendants assert "general objections." But such "general objections" are all invalid because they are not "stated with specificity." Fed. R. Civ. P. 33(b)(4), 34(b)(2)(B). Defendants object to the definitions of the terms "you," and "your" as "overly inclusive of [Defendants'] attorneys and third parties." But they are required to "exercise common sense and attribute ordinary definitions to terms in discovery requests." *Sanchez Y Martin, S.A. v. Dos Amigos, Inc.*, 2019 U.S. Dist. LEXIS 23694, at *11 (S.D. Cal. Feb. 13, 2019). Defendants make identical objections to the requests as "overbroad" and "unduly burdensome" or "disproportionate… given the needs of this case." However, the "burden is on the responding party to justify its objections or its failure to provide complete answers to interrogatories." *Tucker v. AMCO Ins. Co.*, 2018 U.S. Dist. LEXIS 197140, at *16-17 (E.D. Cal. Nov. 19, 2018) (quotation omitted). "[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections." *Glaukos Corp.*, 2019 U.S. Dist. LEXIS 77983, at *5 (quotation omitted); *Bird v. Wells Fargo Bank*, 2017 U.S. Dist. LEXIS 46975, at *13 (E.D. Cal. Mar. 31, 2017) ("To demonstrate the undue burden, the movant must provide affirmative and compelling proof."). Here, Defendants fail to carry their burden of "clarifying, explaining, and supporting their objections with competent evidence." *Glaukos Corp. v. Ivantis, Inc.,* 2019 U.S. Dist. LEXIS 77983, at *5 (C.D. Cal. Jan. 24, 2019),

### D.   Defendants' Not "Reasonably Calculated to Lead to the Discovery of Admissible Evidence" Objections Are Invalid.

Defendants object to all fourteen of Plaintiff's interrogatories and all twenty-two of Plaintiff's RFPs as the requests are not "relevant" and not "reasonably calculated to lead to the discovery of admissible evidence." Such "boilerplate relevancy objections, without setting forth any explanation or argument why the requested documents are not relevant, are improper." *Advanced Visual Image Design, LLC v. Exist, Inc.*, 2015 U.S. Dist. LEXIS 102798, at *6 (C.D. Cal. 2015) (quoting *A. Farber & Ptnrs., Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006)).

### E.   Defendants' "Vague and Ambiguous" Objections Are Invalid.

Defendants object to every request as "vague and ambiguous" but do not identify the terms that are "vague and ambiguous." Further, Defendants are required to "exercise common sense and attribute ordinary definitions to terms in discovery requests." *Sanchez Y Martin, S.A.,* 2019 U.S. Dist. LEXIS 23694, at *11; *Bryant v. Armstrong*, 285 F.R.D. 596, 606 (S.D. Cal. 2012).

### F.   Defendants' "Privilege" Objections Are Invalid.

4

Defendants object to all fourteen of Plaintiff's interrogatories and all twenty-two of Plaintiff's RFPs "to the extent [they] call[] for information protected by the attorney-client privilege, work-product doctrine, or privacy rights under California and/or federal law." This objection is deficient because Defendants have failed to "state whether any responsive materials are being withheld on the basis of a stated objection" and "provide a privilege log." *Caccamis v. Credit One Bank, N.A.*, 2019 U.S. Dist. LEXIS 72083, at *10-11 (S.D. Cal. Apr. 26, 2019).

### G. Defendants' "Confidential Information/Trade Secrets" Objections Are Invalid.

Defendants object to all fourteen of Plaintiff's interrogatories and all twenty-two of Plaintiff's RFPs alleging they "seek confidential business information and/or formulations and/or trade secrets." Defendants also have not provided a response to Plaintiffs September 9 Letter requesting stipulating to the Model Protective Order. To the extent Defendants have concerns relating to the disclosure of confidential information, they may produce documents and information subject to the Protective Order. *See Vibal v. Geico Cas. Co.*, 2018 U.S. Dist. LEXIS 13238, at *12 (S.D. Cal. Jan. 26, 2018).

### H. The "Compilation, Abstract, or Summary of Documents" Objections Are Non-Sensical.

Defendants object to all fourteen of Plaintiff's interrogatories and all twenty-two of Plaintiff's RFPs because they "seek[] a compilation, abstract, and/or summary of documents or business records that may be produced in this action." With respect to Plaintiff's RFPs, the objection is nonsensical. The requests seek Defendants' documents themselves, not summaries of Defendants' documents.

The objection fairs no better with respect to Plaintiff's Interrogatories, which amounts to an "unduly burdensome" objection. Defendants must support such objection with an affidavit or declaration detailing the purported burden imposed by the request. *See Thomas v.* Cate, 715 F. Supp. 2d 1012, 1032 (E.D. Cal. 2010).

### I. Defendants' "Publicly Available" and "Available from Third Parties" Objections Are Invalid.

Defendants object to all fourteen of Plaintiff's interrogatories and all twenty-two of Plaintiff's RFPs because they "seek[] information or documents that are publicly available or in the custody, control, or possession of Plaintiffs or third parties." However,

> The responding party is responsible for all items in "the responding party's possession, custody, or control." Actual possession, custody or control is not required. Rather, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document."

*Nutrition Distribution LLC v. PEP Research, LLC*, 2018 U.S. Dist. LEXIS 134720, at *20 (S.D. Cal. Aug. 9, 2018). To the extent any document that Defendants have a legal right to obtain from any entity

that Defendants control, Defendants must produce it. Moreover, the objection fails because there is no attempt to state which documents Plaintiffs have access to, or which "third parties" have the documents.

### J.   Defendants' Responses That They Would Produce Documents In Lieu of Providing a Written Response Are Invalid

In response to many of Plaintiffs' Interrogatories, Defendants stated that it would produce documents in lieu of providing a written response. Federal Rule of Civil Procedure 33(d)(1) permits reference to business records in response to interrogatories provided the answer to an interrogatory may be determined from the production, the Defendant actually produced the reference item, and the burden of deriving or ascertaining the answer will be substantially the same for either party. *See Stiles v. Walmart, Inc.*, 2020 U.S. Dist. LEXIS 8679, at *27 (E.D. Cal. Jan. 17, 2020) (quoting Fed. R. Civ. P. 33(d)(1)). To date, Defendants failed to produce a single responsive document, let alone establish that deriving or ascertaining the answer will be substantially the same for either party.

### K.   Defendants Improperly Request Costs Associated with Complying with Discovery

In a number Defendants Responses to Plaintiffs' request for production, they demand that Plaintiffs "agree to compensate [Defendants] for the reasonable cost of producing these documents." This position, requiring the requesting party to bear the cost of production is contrary to the presumption that the responding party bears the expense of complying with discovery requests. *See Oppenheimer Fund, Inc., v. Sanders*, 437 U.S. 340, 358 (1978)). Defendants present no evidence to contradict this presumption and thus such a demand is unjustified.

### L.   Defendants Fail to Comply with Judge Spero's Standing Order Regarding Productions

Paragraph 11 of Judge Spero's Civil Standing Order requires parties state "the full extent to which they will produce materials" and that it "shall not be sufficient to object and/or to state that 'responsive' materials will be or have been produced." Standing Orders for Mag. J. Joseph C. Spero, N.D. Cal. (Revised August 17, 2020). Despite this requirement, Defendants stated they would "conduct a reasonable search and provide responsive [material]" in fourteen of the twenty-two Responses to Plaintiffs' Request for Production.

### M.   Defendants Fail to Comply with Judge Spero's Standing Order Regarding Claims or Privilege and/or Work Product

Paragraph 15 of Judge Spero's Standing Orders requires that parties "promptly" provide a "sufficiently detailed and informative" privilege log, Standing Order, No. 15, Defendants have not provided a privilege log. Additionally, Defendants' responses to Plaintiffs' First Set of Interrogatories and Requests for Production make only "generalized claims of privilege or work product protection" and do not identify any of the requirements from Standing Order No. 15 subparts (a)-(d).

**N.  Defendants' Specific Responses To RFPs are Deficient**

**Request for Production No. 1.** Defendants state they will only provide their "current document retention policy." This ignores the relevance of any previous document retention policies, especially those during the class period, as it impedes Plaintiffs' ability to "determine whether any relevant documents are lacking, and evaluate whether additional discovery is necessary in this case." *Sharma v. BMW of N. Am., LLC*, 2016 U.S. Dist. LEXIS 34101, at *10-11 (N.D. Cal. Mar. 15, 2016); *see also Montgomery v. Wal-Mart Stores, Inc.*, 2015 U.S. Dist. LEXIS 191953, at *7-8 (S.D. Cal. Sep. 5, 2015).

**Request for Production Nos. 2-4.** Defendants state for all three of these requests that they will provide the "current organization chart for the Ortega taco shells business unit." Defendant ignores the relevance of both documents and organizational charts related to previous periods, especially those during the class period. Additionally, Defendants' response ignores the relevance of Defendants' third-party marketing and advertising services related to the product at issue during the class period.

**Request for Production Nos. 7, 8, 9, and 11.** In response to the above requests, Defendants provided they would produce relevant material "predating the removal of the '0g trans fat' language…" This position ignores these potential existence of plans, proposals, communications, marketing or advertising is relevant to the current proceedings on the "0g trans fat" claim or the amount of trans fat in these products after the removal of the language from the labels.

**Request for Production No. 12**. Defendants flatly refuse to produce documents in their procession discussing PHO or trans fat despite the relevance to Defendants' knowledge of the dangers of the these two ingredients and its continued production of products containing both PHO and trans fat.

**Request for Production No. 13.** Defendants additionally refuse to produce documents relating to the amount of PHO or trans fat in the Ortega taco shells, despite the relevance of this request. Such documents have a direct bearing on Plaintiffs' false or misleading claims.

**Response to Request for Production Nos. 14.** Defendant again flatly refuses to produce any documents containing the cost of any actual, potential, or proposed formula changes the Ortega taco shell despite this inquiry being relevant and/or likely to lead to admissible evidence. Such a request goes to not only Defendants' knowledge of the content but also whether Defendants' decision to keep PHO as an ingredient in the product was intentional.

**Request for Production No. 16.** Defendants also refuse to produce any document in Defendants' possession regarding the dangers of trans fat on humans or animals. Such flat refusal again ignores the relevance of this request or its potential to lead to admissible evidence. Such a request again is probative

of Defendants' knowledge that its product contained trans fat, knowledge of the dangers posed by PHO and trans facts, and intent regarding keeping trans fat in the product.

**Interrogatories Nos. 5, 7, and 10.**  Defendants refuse to provide any answer to Plaintiffs interrogatories which request information on the amount of PHO per serving, products sold which contained PHO, and whether those containing such content were labeled as not containing 0g or zero grams of trans fat. Defendants complete refusal to provide information directly relevant to Plaintiffs claims and the issues in dispute.

### DEFENDANTS' POSITION

As noted above and below, virtually all of the "issues" raised by Plaintiffs have been addressed during the Parties' videoconference meet and confers.  As best B&G Foods can determine from Plaintiffs' disorganized submission, Plaintiffs' arguments have no merit for at least the reasons below.

#### A. B&G Foods's Responses Comply with the Federal Rules and the Court's Standing Order

In each of its responses to Plaintiffs' Requests for Production, Defendants stated that they would either produce all responsive documents, produce certain specified documents, or would not produce documents because the requests were related to claims dismissed from the case.  During the October 23, 2020 meet and confer, B&G Foods also explained to Plaintiffs that, to the extent it withholds any documents based on any claim of privilege or any other objection, it would promptly identify those documents on a privilege log.

#### B. B&G Foods's Responses to Particular Requests Are Proper

*RFP 1*. B&G Foods has agreed to produce its current document retention policy. Plaintiffs have not explained why any document retention policy predating the filing of this litigation in January 2020 would be relevant.

*RFPs 2-4*. B&G Foods has agreed to produce any organization charts created during the class period, to the extent they exist.

*RFPs 7, 8, 9, 11*. B&G Foods has agreed to produce documents prior to the label change in 2015. Documents post-dating the label change are not relevant – the only claim left in the case is that the Plaintiffs saw the "0g trans fat label" and bought the taco shells because of that language and were thus misled. Once that language was removed in April 2015, no one else could have been misled and

there is no basis for discovery following that time (apart from sales numbers, which may be used to determine the economic effect of removing the language and which B&G Foods has agreed to produce.)

     ***RFPs 12-14, 16, and Interrogatories 5, 7, and 10.*** These requests seek information regarding the use or presence of PHOs or trans fats. All of Plaintiffs' claims regarding the use of these ingredients have been dismissed. Plaintiff's remaining claim is that they were misled by the claim "0g trans fat." The amount of PHOs or trans fat in the product has no bearing on this claim.

Dated: December 2, 2020              Respectfully submitted,

                                   /s/ Gregory S. Weston

                                   **THE WESTON FIRM**
                                   GREGORY S. WESTON
                                   1405 Morena Blvd, Suite 201
                                   San Diego, CA 92110
                                   Telephone:    (619) 798-2006
                                   Facsimile:     (619) 343-2789

                                   **Counsel for Plaintiffs**

                                   */s/* David Kwasniewski

                                   **BRAUNHAGEY & BORDEN LLP**
                                   220 Sansome Street, Second Floor
                                   San Francisco, CA 94104
                                   Telephone:    (415) 599-0210
                                   Facsimile:     (415) 276-1808

                                   **Counsel for Defendants**

*Silva et al. v. B&G Foods Inc et al.*, Case No. 4:20-cv-137-JST
JOINT LETTER re DISCOVERY DISPUTE