**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:      (619) 798-2006
Facsimile:      (619) 343-2789

**Counsel for Plaintiffs**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA SILVA and NANCY SCHIER, on behalf of themselves and all others similarly situated, | Case No: 4:20-cv-137-JST |
| Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS; MEMORANDUM IN SUPPORT** |
| v. | Judge: The Honorable Jon S. Tigar<br>Date: April 15, 2021 |
| B&G FOODS, INC. and B&G FOODS NORTH AMERICA, INC., | Time: 2:00 p.m.<br>Location: Courtroom 6 |
| Defendants. | |

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 15, 2021 at 2:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Jon S. Tigar in Courtroom 6 of the United States District Court for the Northern District of California, located at 1301 Clay St., Oakland, CA 94612, Plaintiffs Sabrina Silva and Nancy Schier (collectively, "Plaintiffs") will respectfully move the Court for an order, pursuant to Federal Rule of Civil Procedure 12(c), granting Plaintiffs partial judgment on the pleadings in the above-titled action on two issues: (1) that Defendants' use of the unauthorized nutrient content claim "0g Trans Fat Per Serving!" to promote its Ortega taco shells ("Taco Shells") violated 21 C.F.R. § 101.13 and 101.62 and thus was "unlawful" under the UCL; and (2) that seven of Defendants' twelve affirmative defenses are legally defective, and judgment should be entered for Plaintiffs as to each one.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum, Plaintiffs' Second Amended Complaint (Dkt. 36), Defendants' Answer to Second Amended Complaint (Dkt. 43), Plaintiffs' Request for Judicial Notice and exhibits thereto, and such other evidence as the Court may permit before or during the hearing of this Motion.

DATED: March 11, 2021                    Respectfully Submitted,

                                          /s/Gregory S. Weston
                                          Gregory S. Weston
                                          **THE WESTON FIRM**
                                          GREGORY S. WESTON
                                          1405 Morena Blvd., Suite 201
                                          San Diego, CA 92110
                                          Telephone:     (619) 798-2006
                                          Facsimile:     (619) 343-2789

                                          **Counsel for Plaintiffs**

i

*Silva et al. v. B&G Foods Inc. et al.,* Case No. 4:20-cv-137-JST
PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................................. 1

II.     LEGAL STANDARD......................................................................................................... 2

III.    DEFENDANTS VIOLATED 21 C.F.R. §§ 101.62 AND 101.13.................................. 2

   A.  Defendants' Unauthorized "0g Trans Fat" Claim Violated 21 C.F.R. § 101.62(a) ...................... 3

   B.  Defendants Violated 21 C.F.R. § 101.13 by Falsely Claiming that the Taco Shells Contained "0g Trans Fat"................................................................................................................ 5

IV.    DEFENDANTS' REGULATORY VIOLATIONS CONSTITUTE VIOLATIONS OF THE UCL'S "UNLAWFUL PRONG." ................................................................................ 7

V.     DEFENDANTS' AFFIRMATIVE DEFENSES ARE LEGALLY DEFECTIVE. ........................ 8

   A.  Defendants' First Affirmative Defense (Failure to State a Claim) ................................. 8

   B.  Defendants' Second Affirmative Defense (Preemption) ............................................... 9

   C.  Defendants' Third Affirmative Defense (Primary Jurisdiction).................................... 9

   D.  Defendants' Fifth Affirmative Defense (Safe Harbor) ............................................... 10

   E.  Defendants' Sixth Affirmative Defense (Standing)..................................................... 12

   F.  Defendants' Eleventh Affirmative Defense (Mootness)............................................. 12

VI.    CONCLUSION................................................................................................................. 13

*Silva et al. v. B&G Foods Inc. et al.,* Case No. 4:20-cv-137-JST
PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

# TABLE OF AUTHORITIES

**CASES**

*Abbott Ford, Inc. v. Superior Court*,
    43 Cal. 3d 858  (1987) ............................................................................................. 12

*Am. Title Ins. Co. v. Lacelaw Corp.*,
    861 F.2d 224 (9th Cir. 1988) ...................................................................................... 5

*Ansari v. Elec. Document Processing, Inc.*,
    2012 U.S. Dist. LEXIS 128622 (N.D. Cal. Sep. 10, 2012) .................................... 9, 12

*Barnes v. AT&T Pension Benefit Plan*,
    718 F. Supp. 2d 1167 (N.D. Cal. 2010) ............................................................ 8, 10, 12

*Cain v. Burns*,
    131 Cal. App. 2d 439 (1955) ..................................................................................... 13

*Carmen v. San Francisco Unified School Dist.*,
    982 F. Supp. 1396 (N.D. Cal. 1997) ........................................................................... 2

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ............................................................................................... 7

*Chetal v. United States DOI*,
    2019 U.S. Dist. LEXIS 46361 (N.D. Cal. Mar. 20, 2019) .......................................... 12

*Eidmann v. Walgreen Co.*,
    2021 U.S. Dist. LEXIS 36800 (N.D. Cal. Feb. 26, 2021) ............................................ 3

*Elder v. Pac. Bell Tel. Co.*,
    205 Cal. App. 4th 841 (2012) ..................................................................................... 7

*Estate of Cohen*,
    66 Cal. App. 2d 450 (1944) ....................................................................................... 12

*Fishman v. Tiger Nat. Gas Inc.*,
    2018 U.S. Dist. LEXIS 159425 (N.D. Cal. Sep. 18, 2018) ........................................ 12

*Hadley v. Kellogg Sales Co.*,
    2019 U.S. Dist. LEXIS 136791 (N.D. Cal. Aug. 13, 2019) .......................................... 7

*Hal Roach Studios v. Richard Feiner & Co.*,
    896 F.2d 1542 (9th Cir. 1989) .................................................................................... 2

*Hawkins v. Kroger Co.*,
    2019 U.S. Dist. LEXIS 59249 (S.D. Cal. Apr. 4, 2019) ........................................ 9, 10

iii

*Silva et al. v. B&G Foods Inc. et al.*, Case No. 4:20-cv-137-JST
PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

*Hawkins v. Kroger Co.*,
   2021 U.S. Dist. LEXIS 11346 (S.D. Cal. Jan. 11, 2021)...................................................... passim

*Hawkins v. Kroger Co.*,
   906 F.3d 763 (9th Cir. 2018) ................................................................................................ passim

*Hishon v. King & Spalding*,
   467 U.S. 69 (1984)...........................................................................................................................2

*Ho v. Sin*,
   2018 U.S. Dist. LEXIS 227143 (C.D. Cal. Apr. 6, 2018) ........................................................ 13

*In re Santa Fe Nat. Tobacco Co. Mktg. Litig.*,
   288 F. Supp. 3d 1087 (D.N.M. 2017) ...................................................................................... 12

*In re Zappos.com, Inc.*,
   888 F.3d 1020 (9th Cir. 2018) .................................................................................................. 12

*J & J Sports Prods. v. Mendoza-Govan*,
   2011 U.S. Dist. LEXIS 47075 (N.D. Cal. Apr. 25, 2011) ........................................................... 8

*Jenkins v. JPMorgan Chase Bank, N.A.*,
   216 Cal. App. 4th 497 (2013) .................................................................................................... 7

*Jordan v. Paul Fin., LLC*,
   745 F. Supp. 2d 1084 (N.D. Cal. 2010) .................................................................................... 10

*Landmark Equity Fund II, LLC v. Arias*,
   2015 U.S. Dist. LEXIS 90197 (E.D. Cal. July 9, 2015) ............................................................. 8

*Lockwood v. Wolf Corp.*,
   629 F.2d 603 (9th Cir. 1980) ...................................................................................................... 5

*Mag Instrument, Inc. v. JS Prods.*,
   595 F. Supp. 2d 1102 (C.D. Cal. 2008) ...................................................................................... 2

*Muller v. Muller*,
   206 Cal. App. 2d 731 (1962) .................................................................................................... 13

*Nw. S.S. Co. v. Cochran*,
   191 F. 146 (9th Cir. 1911) ........................................................................................................ 13

*Perez v. Gordon & Wong Law Grp., P.C.*,
   2012 U.S. Dist. LEXIS 41080 (N.D. Cal. Mar. 26, 2012)...................................................... 9, 10

*Qarbon.com Inc. v. eHelp Corp.*,
   315 F. Supp. 2d 1046 (N.D. Cal. 2004) .................................................................................... 10

iv

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015) ............................................................ passim

*SEC v. Sands*,
   902 F. Supp. 1149 (C.D. Cal. 1995) ......................................................... 8

*Silver v. BA Sports Nutrition, LLC*,
   2020 U.S. Dist. LEXIS 99320 (N.D. Cal. June 4, 2020) ........................... 7, 8

*Smith v. State Farm Mut. Auto. Ins. Co.*,
   93 Cal. App. 4th 700 (2001) ................................................................... 10

*Spears v. First Am. Eappraiseit*,
   2013 U.S. Dist. LEXIS 58292 (N.D. Cal. Apr. 23, 2013) ............................ 8

*Two Jinn, Inc. v. Gov't Payment Serv., Inc.*,
   233 Cal. App. 4th 1321 (2015) ................................................................. 7

*U.S. v. Dotterweich*,
   320 U.S. 277 (1943) ................................................................................. 3

*U.S. v. Watkins*,
   278 F.3d 961 (9th Cir. 2002) .................................................................... 3

*United States v. W. Pac. R.R. Co.*,
   352 U.S. 59 (1956) ................................................................................... 9

*United Studios of Self Def., Inc. v. Rinehart*,
   2019 U.S. Dist. LEXIS 37993 (C.D. Cal. Feb. 22, 2019) ............................ 8

*Wi2wi, Inc. v. Twin City Fire Ins. Co.*,
   2020 U.S. Dist. LEXIS 153784 (N.D. Cal. May 5, 2020) ............................ 2

*Z Channel Ltd. P'ship v. Home Box Office, Inc.*,
   931 F.2d 1338 (9th Cir. 1991) ................................................................ 12

**STATUTES**

21 U.S.C. § 331 ............................................................................................... 3

21 U.S.C. § 393(b)(2)(A) .................................................................................. 3

**OTHER AUTHORITIES**

68 Fed. Reg. 41,434 (July 11, 2003) ................................................................ 3

80 Fed. Reg. 34650 (June 17, 2015). ........................................................ 6, 11

v

*Silva et al. v. B&G Foods Inc. et al.*, Case No. 4:20-cv-137-JST
PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

## I.   __INTRODUCTION__

This false advertising and unlawful misbranding action involves one product and one false claim, the bold-type front-label claim "**0g Trans Fat!**" Here, Defendants' liability under California law can be determined on the pleadings because this claim is illegal for three separate reasons. First, the claim is simply false, so it violates the UCL, FAL, and CLRA. Second, the claim violates 21 C.F.R. § 101.13(i)(3), which provides general rules for nutrient content claims, including that they may not be "false or misleading in any respect." Third, the claim violates 21 C.F.R.§ 101.62, which states only specifically authorized claims about fat can be made, and then provides rules for claims about the absence of fat and saturated fat, but not for trans fat. Because only claims about trans fat authorized by § 101.62 are permitted, and no trans fat claim is authorized, Defendants' "**0g Trans Fat!**" claim was unlawful.

The Court has the benefit in deciding this motion of two recent and detailed decisions by the Ninth Circuit applying § 101.62 to false claims about the absence of trans fat. *Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015) determined that "[b]ecause Benecol contains some trans fat (between 0 and 0.5 grams per serving), its 'No Trans Fat' claim is misleading in at least one respect" and violated §§ 101.62 and 101.13. *Id.* at 962.

While Ortega Taco Shells say "**0g Trans Fat!**" rather than "No Trans Fat," this minor change in wording does not change the decision. The second controlling Ninth Circuit case involved the identical false claim in this case, and found *Reid* "squarely controlled" because it "makes no difference that here the label outside the Nutrition Fact Panel stated that the product had '0g Trans Fat,' whereas in *Reid* it was 'No Trans Fat.'" *Hawkins v. Kroger Co.*, 906 F.3d 763, 771 (9th Cir. 2018).

The deliberate addition of trans fat to the food supply well after its dangers were established is a public health catastrophe on the scale of asbestos and lead paint, resulting in annual excess deaths of 100,000 Americans each year during the 1990s and 2000s, when trans fat was added to 40% of packaged food, and for some individuals, was the source of 5% of their daily calories. Defendants here not only used it, but also falsely claimed their product was free of it. "And unlike other products, where the distinction may not be inimical to the public health, falsely advertising that a food product does not contain trans fat is a health hazard." *Hawkins*, 906 F.3d at 772. Two months ago, on remand from the

1

Ninth Circuit, the Honorable Jeffery Miller granted the certified plaintiff class partial summary judgment on the exact ground Plaintiffs here move. *Hawkins v. Kroger Co.*, 2021 U.S. Dist. LEXIS 11346, at \*18 (S.D. Cal. Jan. 11, 2021). While the posture was technically different, no evidence was needed to grant the plaintiff class partial summary judgment beyond the product label with the false "0g Trans Fat" claim. That claim, together with the ingredient listing of partially hydrogenated oil, the source of trans fat,[1] was the only evidence needed in *Hawkins* for the grant of partial judgment. Here, the label is incorporated by reference into the pleadings, and also subject to judicial notice.

## II.   LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings is a vehicle for summary adjudication, but the standard is like that of a motion to dismiss." *Mag Instrument, Inc. v. JS Prods.*, 595 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). *See also Wi2wi, Inc. v. Twin City Fire Ins. Co.*, 2020 U.S. Dist. LEXIS 153784, at \*10 (N.D. Cal. May 5, 2020) (same). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "Although Rule 12(c) does not expressly authorize partial judgments, neither does it bar them, and it is common practice to apply Rule 12(c) to individual causes of action." *Carmen v. San Francisco Unified School Dist.*, 982 F. Supp. 1396, 1401 (N.D. Cal. 1997).

## III.   DEFENDANTS VIOLATED 21 C.F.R. §§ 101.62 AND 101.13.

Based on Defendants' Answer to the Second Amended Complaint ("SAC"), there is no dispute that the Ortega Taco Shell label contained the statement "0g Trans Fat" when in fact the product did contain trans fat. Dkt. 36, SAC ¶¶ 4-11, 81; Dkt. 43, Defendants' Answer to SAC ("Answer") ¶ 81.

The two labels, which were photographed in the operative complaint, are further provided the in the concurrently-filed request for judicial notice. They "meet the standard for judicial notice under the doctrine of incorporation by reference," as because (1) Plaintiffs make "numerous references to both

---

[1] "[T]rans fats are an integral component of PHOs and are purposely produced in these oils." Final Determination on PHOs, 80 Fed. Reg. 34650 (June 17, 2015).

product labels in the Amended Complaint;" (2) "the labels are central to" their claims; (3) they contain "the information conveyed on the . . .Product packaging that" Plaintiffs allege "was false or misleading." *Eidmann v. Walgreen Co*., 2021 U.S. Dist. LEXIS 36800, at *8 (N.D. Cal. Feb. 26, 2021). They were also produced in discovery by Defendants, so their authenticity is not in dispute.

Defendants' conduct violated (1) 21 C.F.R. § 101.62(a), governing nutrient content claims relating to fat and (2) 21 C.F.R. § 101.13, which prohibits nutrient content claims that are "false or misleading in any respect." As a matter of law, each of these violations constitutes a violation of UCL's "unlawful" prong.

**A**.      **Defendants' Unauthorized "0g Trans Fat" Claim Violated 21 C.F.R. § 101.62(a)**

The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 et seq. ("FDCA") was passed to ensure "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A). The FDCA prohibits the distribution and sale of misbranded foods. *Id*. §§ 331(a)-(c), (g). "An article may be misbranded . . . 'without any conscious fraud at all.'" *U.S. v. Watkins*, 278 F.3d 961, 964 (9th Cir. 2002) (quoting *U.S. v. Dotterweich*, 320 U.S. 277, 281 (1943)). The claim a product is "0g Trans Fat" is classified as a nutrient content claim. *See* 21 C.F.R. § 101.13(b).

> Under the FDA regulations, the general rule is that "nutrient content claims" are not permitted on food labels. Nutrient content claims are statements that "expressly or implicitly characterize[] the level of a nutrient." However, the regulations do authorize some nutrient content claims.

*Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015) (citing 21 C.F.R. § 101.13(b)).

FDA regulations specifically address which nutrient content claims are permitted about fats. 21 C.F.R. § 101.62; 21 C.F.R. § 101.13(i)(4). "A claim about the level of fat, fatty acid, and cholesterol in a food may only be made on the label or in the labeling of foods if . . . [t]he claim uses one of the terms defined in this section in accordance with the definition for that term." 21 C.F.R. § 101.62(a).

> Outside the nutrition label, claimants may make nutrient content claims such as "fat free," "no fat," "zero fat," or "negligible source of fat" on labels where the food contains less than 0.5 grams of fat per serving and certain other conditions are met. *Id*. § 101.62(b). There is a parallel regulation permitting similar claims about "saturated fat," see *id*. § 101.62(c), but not about "trans fat." The FDA considered authorizing a "trans fat free" claim but decided not to enact the regulation in light of "insufficient scientific information."

*Reid*, 780 F.3d at 960 (citing Food Labeling: Trans Fatty Acids in Nutrition Labeling, Nutrient Content Claims, Health Claims, 68 Fed. Reg. 41,434, 41,464-65 (July 11, 2003)). "[J]ust as the regulations do

3

not authorize a 'no trans fat' claim, they also do not authorize a 'zero trans fat' claim. And we see no rational difference between 'zero' and '0.'" *Hawkins v. Kroger Co.*, 906 F.3d 763, 771 (9th Cir. 2018). Therefore, the use of "no trans fat" and "0g trans fat" is not authorized.

As noted in the introduction, Judge Miller granted partial summary judgment to a certified class making identical claims about another product made with trans fat but promoted with a false "0g Trans Fat" claim. As here, the plaintiff argued the use of a "'0g Trans Fat' label" on a product containing artificial trans fat "violated 21 C.F.R. §§ 101.13 and § 101.62." *Hawkins v. Kroger Co.*, 2021 U.S. Dist. LEXIS 11346, at *15 (S.D. Cal. Jan. 11, 2021). The Hawkins court noted that

> Under 21 C.F.R. § 101.62(a)(1)-(2), "[a] claim about the level of fat . . . in a food may only be made on the label . . . if . . . (1) [t]he claim uses one of the terms defined in this section [or] (2) [t]he claim is made in accordance with the general requirements for nutrient content claims in § 101.13. Section 101.13 provides "the label or labeling of a product may contain a statement about the amount or percentage of a nutrient if . . . [t]he statement does not in any way implicitly characterize the level of the nutrient in the food and it is not false or misleading in any respect (e.g., '100 calories' or '5 grams of fat')[.]" 21 C.F.R. § 101.13(i)(3).

*Id.* at *15-16. Further,

> In *Reid*, the Ninth Circuit held that § 101.13(i)(3) does not "authorize" a "No Trans Fat" claim on the label of a food product, and therefore the plaintiff's UCL claims based on the "No Trans Fat" label were not preempted by federal law. 780 F.3d at 963. The court reasoned (1) "[a] nutrient content claim *fails* [under §101.13(i)(3)]" if it is "false or misleading in any respect" and (2) "[b]ecause [the product] contain[ed] some trans fat (between 0 and 0.5 grams per serving), its 'No Trans Fat' claim [was] misleading in at least one respect." *Id.* at 962 (emphasis added). The Ninth Circuit rejected the district court's finding that the "No Trans Fat" label was not misleading. *Id.* at 963.
>
> In this case, the Ninth Circuit interpreted *Reid* to hold (1) "the statement 'No Trans Fat' was *not allowed* outside of the Nutrition Facts Panel since the product did contain trans fat," and (2) "under the regulations, [the 'No Trans Fat' claim] could *only* be made if it did 'not in any way implicitly characterize the level of the nutrient in the food and [was] not false or misleading in any respect.'" *Hawkins*, 906 F.3d at 770 (emphasis added).

*Hawkins*, 2021 U.S. Dist. LEXIS 11346, at *16-17.

The defendant argued that "*Reid* and *Kroger* merely held the labels were not preempted by FDA regulations because the labels were not 'expressly authorized'" and that Hawkins failed "to meet her burden because she fails to provide any actual evidence that there is no genuine dispute the '0g Trans Fat' label was false or misleading." *Id.* at *17.

The court rejected this argument, as "the nutrition label itself, which lists PHO as an ingredient, is actual evidence the '0g Trans Fat' label was false or misleading" and Kroger did "not dispute the

4

breadcrumbs contain some trans fat." *Id.* Thus, Judge Miller held

> 21 C.F.R. § 101.62(a)(1)-(2) provides that claims about the level of fat may "only" be made on the label if (1) the claim uses one of the terms defined in the regulations, and (2) the claim is not false or misleading. Here, the claim "0g Trans Fat" is not defined in the regulations, and there is no genuine dispute the breadcrumbs contain some trans fat. Accordingly, **Plaintiff's motion for summary judgment that the "0g Trans Fat" label violated 21 C.F.R. §§ 101.62(a)(1)-(2) and 101.13(i)(3) is GRANTED as to that particular issue**

*Id.* at \*18 (emphasis added).

Here, as in *Hawkins*, Plaintiffs allege, and Defendants do not deny[2] that the Taco Shells' label contained the statement "0g TRANS FAT" and thus made an unlawful nutrient content claim. SAC ¶¶ 4-11, 81; Dkt. 43, Answer" ¶ 81. *See also* RJN Exs. 1-2.  Specifically, Plaintiffs' SAC paragraphs 68, 69, 72, 73 74, 77 allege that the Taco Shells were advertised with the label containing a statement "'0g Trans Fat!'" SAC ¶¶ 68, 69, 72, 73 74, 77. *See also* RJN Exs. 1-2. Defendants, in their Answer to the SAC, do not deny that the statement appeared on the labels but instead admit that the Taco Shells bore such labeling. Answer, ¶¶ 68, 69, 72, 73 74, 77. Additionally, paragraph 81 of the SAC, contains photos of the product and its "0g Trans Fat!" claim. SAC ¶ 81. The Answer does not deny that the images accurately represent their product label. Answer ¶ 81.

**B.    Defendants Violated 21 C.F.R. § 101.13 by Falsely Claiming that the Taco Shells Contained "0g Trans Fat"**

21 C.F.R. § 101.13(i)(3) prohibits nutrient content claims "about the amount or percentage of a nutrient" that are "false or misleading in any respect."

In *Reid*, the Ninth Circuit held the defendant's "No Trans Fat" claim was "misleading in at least one respect" because the product at issue "contain[ed] *some* trans fat (between 0 and 0.5 grams per serving)." *Reid v. Johnson & Johnson*, 780 F.3d 952, 962 (9th Cir. 2015). In *Hawkins*, assessing a "0g Trans Fat" claim under 21 C.F.R. § 101.13, the Ninth Circuit held

> *Reid* squarely controls here. As in *Reid*, we have an expressed nutrient content claim that the product does not contain trans fat. Also as in *Reid*, the manufacturer was required to state that the product had "0g trans fat per serving" within the Nutrition Facts Panel. And, just as in *Reid*,

---

[2] Failure to deny an allegation in an Answer to a complaint constitutes an admission. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988); *Lockwood v. Wolf Corp.*, 629 F.2d 603, 611 (9th Cir. 1980). Additionally, any denial in the Answer "must fairly respond to the substance of the allegation" that is being denied. Fed. R. Civ. P. 8(b)(2).

5

*Silva et al. v. B&G Foods Inc. et al.*, Case No. 4:20-cv-137-JST
PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

because of § 101.13(c), this requirement did not give the manufacturer license to make the same claim elsewhere on the product, and the rest of the product labeling was subject to the rules governing nutrition content claims, including that the claim not be "false or misleading in any way." 21 C.F.R. § 101.13(i)(3).

It makes no difference that here the label outside the Nutrition Fact Panel stated that the product had "0g Trans Fat," whereas in *Reid* it was "No Trans Fat." Just as in *Reid*, a consumer reading the label could be misled into believing that the product was free of trans fat.

Moreover, like in *Reid*, the regulations also bolster our conclusion in this case. In addition to authorizing "no fat" and "no saturated fat" claims, §§ 101.62(b)-(c) also authorize "zero fat" and "zero saturated fat" claims. But just as the regulations do not authorize a "no *trans* fat" claim, they also do not authorize a "zero *trans* fat" claim. And we see no rational difference between "zero" and "0." Spelling out the number does not change its meaning. To hold otherwise would create an illogical rule where the claim "zero trans fat" is misleading but "0 trans fat" is not.

*Hawkins v. Kroger Co.*, 906 F.3d 763, 771 (9th Cir. 2018). Thus, as a matter of law, "0g Trans Fat" claims on products which contain artificial trans fat are misleading and violative of 21 C.F.R. § 101.13. *See also Hawkins v. Kroger Co.*, 2021 U.S. Dist. LEXIS 11346, at \*17 (S.D. Cal. Jan. 11, 2021) (The "nutrition label itself, which lists PHO as an ingredient, is actual evidence the '0g Trans Fat' label was false or misleading.").

There is also no material dispute that the "0g Trans Fat" representation was false, in violation of 21 C.F.R. § 101.13(i)(3). The ingredient list states that the product contains PHO, SAC ¶ 81 and RJN Exs. 1-2, and "trans fats are an integral component of PHOs." Final Determination Regarding Partially Hydrogenated Oils, 80 Fed. Reg. 34650 (June 17, 2015).

Again, Defendants' Answer to the SAC does not deny that the images of the Ortega label in the SAC accurately depict their product label, but simply states that the products "were labeled in conformance with FDA regulations and guidance." Answer ¶ 81. By not specifically denying Plaintiffs' allegation that the labels produced in paragraph 81 accurately reflect the label for Ortega in use during the class period is admission that the product was made with PHO and thus trans fat. Further, product labels produced by Defendants in discovery list PHO as an ingredient and bear the claim "0g Trans Fat Per Serving!" *See* RJN Exs. 1-2.

Because Ortega Taco Shells contain "some trans fat (between 0 and 0.5 grams per serving)," B&G's "0g Trans Fat" claim is false and "misleading in at least one respect." *Reid* 780 F.3d at 962. Further, "falsely advertising that a food product does not contain trans fat is a health hazard." *Hawkins*,

6

*Silva et al. v. B&G Foods Inc. et al.*, Case No. 4:20-cv-137-JST
PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

906 F.3d at 772. Thus, the "'0g Trans Fat' label violated 21 C.F.R. §§ 101.62(a)(1)-(2) and 101.13(i)(3)." *Hawkins*, 2021 U.S. Dist. LEXIS 11346, at \*18.

## IV.    DEFENDANTS' REGULATORY VIOLATIONS CONSTITUTE VIOLATIONS OF THE UCL'S "UNLAWFUL PRONG."

Defendants' violations of 21 C.F.R. §§ 101.62 and 101.13 in turn constitute violations of the UCL's "unlawful" prong, which "'borrows' violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." *Two Jinn, Inc. v. Gov't Payment Serv., Inc*., 233 Cal. App. 4th 1321, 1336-37 (2015) (quoting *Jenkins v. JPMorgan Chase Bank, N.A*., 216 Cal. App. 4th 497, 520 (2013)); *see also Elder v. Pac. Bell Tel. Co*., 205 Cal. App. 4th 841, 856 (2012) ("By proscribing 'any unlawful' business practice' the UCL 'borrows' violations of other laws and treats them as unlawful practices' that the [UCL] makes independently actionable.'") (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)). Accordingly, violations of the FDCA and its implementing regulations are predicate acts under the UCL's "unlawful" prong. *See also Hadley v. Kellogg Sales Co*., 2019 U.S. Dist. LEXIS 136791, at \*71-72 (N.D. Cal. Aug. 13, 2019) (granting a class of cereal buyers summary judgment because the defendant's "violation of FDA regulations" constitute violations of the UCL's unlawful prong ).

To prevail on a claim under the UCL's "unlawful" prong, Plaintiffs need only show (1) the violation of any predicate law or regulation and (2) injury resulting from the predicate violation. *Hadley* 2019 U.S. Dist. LEXIS 136791 at \*71. Such a ruling would reserve for summary judgment or bench trial the question of the proper remedies, in equity, for Ortega's violations. In *Hadley*, Judge Koh noted that

> The predicate violation is Kellogg's violation of FDA regulations. The Ninth Circuit in *Bruton* addressed the violation of FDA regulations as a predicate violation for a UCL unlawful prong claim. The Ninth Circuit in *Bruton* held that the "FDA regulations include no requirement that the public be likely to experience deception," and thus, the "reasonable consumer test" is not an element of a violation of FDA regulations.

2019 U.S. Dist. LEXIS 136791 at \*71. Likewise, in *Silver v. BA Sports Nutrition, LLC*, Judge Ilston held

> with respect to the "fortification" allegations (plaintiff Silver's first cause of action under the UCL's unlawful prong), because the predicate violation is based on FDA regulations which include no requirement that the public be likely to experience deception, the reasonable consumer standard does not apply.

7

*Silva et al. v. B&G Foods Inc. et al.,* Case No. 4:20-cv-137-JST
PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

2020 U.S. Dist. LEXIS 99320, at *10 (N.D. Cal. June 4, 2020).

Here, too, because the "predicate violation is based on FDA regulations which include no requirement that the public be likely to experience deception, the reasonable consumer standard does not apply." *Silver*, 2020 U.S. Dist. LEXIS 99320, at *10.

Plaintiffs have demonstrated Defendants' predicate violations of 21 C.F.R. §§ 101.13 and 101.62, which constitute violations of the UCL. Further, Plaintiffs have demonstrated that they "lost money or property as a result of" Defendants' "unlawful act"—they purchased a product that was not legally permitted for sale and which contained a false statement that it was free of a dangerous chemical.

## V.   DEFENDANTS' AFFIRMATIVE DEFENSES ARE LEGALLY DEFECTIVE.

This Court should streamline the issues for discovery and trial by entering judgment on the pleadings as to many of Defendants' affirmative defenses. *Spears v. First Am. Eappraiseit*, 2013 U.S. Dist. LEXIS 58292, at *19-21 (N.D. Cal. Apr. 23, 2013) (recognizing same ability to strike defenses through Rule 12(c) motion as Rule 12(f) motion and that same standard applies).

"An affirmative defense may be stricken as insufficient either as a matter of law or as a matter of pleading." *United Studios of Self Def., Inc. v. Rinehart*, 2019 U.S. Dist. LEXIS 37993, at *30 (C.D. Cal. Feb. 22, 2019). "A defense is insufficient as a matter of law when there are no questions of fact, questions of law are clear and not in dispute, and the defense would not succeed under any circumstances." *Landmark Equity Fund II, LLC v. Arias*, 2015 U.S. Dist. LEXIS 90197, at *7 (E.D. Cal. July 9, 2015) (citing *SEC v. Sands*, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995)).

Plaintiffs respectfully request that the Court enter judgment on the pleadings as to seven of Defendants' twelve affirmative defenses as insufficient as a matter of law.

### A.   Defendants' First Affirmative Defense (Failure to State a Claim)

Defendants' First Affirmative Defense asserts that the SAC "fails to state a claim upon which relief can be granted." Answer at 20. However, "[f]ailure to state a claim is not a proper affirmative defense but, rather, asserts a defect in the plaintiff's prima facie case." *J & J Sports Prods. v. Mendoza-Govan*, 2011 U.S. Dist. LEXIS 47075, at *14-15 (N.D. Cal. Apr. 25, 2011) (quotations and brackets omitted) (quoting *Barnes v. AT&T Pension Benefit Plan*, 718 F. Supp. 2d 1167, 1174 (N.D. Cal. 2010)). Thus, Defendants' "first affirmative defense, based on failure to state a claim upon which relief can be

8

*Silva et al. v. B&G Foods Inc. et al.,* Case No. 4:20-cv-137-JST
PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

granted, is better understood as a denial of Plaintiff's allegations rather than as an affirmative defense." *Ansari v. Elec. Doc. Processing, Inc.*, 2012 U.S. Dist. LEXIS 128622, at *14 (N.D. Cal. Sep. 10, 2012) (citing *Perez v. Gordon & Wong Law Grp., P.C.*, 2012 U.S. Dist. LEXIS 41080, at *40 (N.D. Cal. Mar. 26, 2012) (striking affirmative defense of failure to state a claim because it was not a proper affirmative defense); *Hawkins,* 2021 U.S. Dist. LEXIS 11346, at *29 (granting "Plaintiff's motion for summary judgment" as to the defendant's "failure to state a claim" affirmative defense because it was "not" an "affirmative defense[]."")

### B.   Defendants' Second Affirmative Defense (Preemption)

Defendants' Second Affirmative Defenses (Preemption) reads, in full, "Plaintiffs' claims are preempted by federal law." Answer at 20. This exact defense has already been rejected by the Ninth Circuit. *See Hawkins v. Kroger Co*., 906 F.3d 763, 769-73 (9th Cir. 2018). "Because the FDA regulations do not authorize the contested statement ['0g Trans fat'], [Plaintiff's] labeling claims are not preempted. *Id.* at 772. For the purposes of this motion, this case involves the same statement "0g Trans Fat" claim and same theory of liability addressed in *Hawkins*. On remand, Kroger sought to reassert preemption as an affirmative defense, but this was rejected because "Kroger's preemption defense fails as a matter of law because it has already been rejected by th[e] court and the Ninth Circuit." *Hawkins v. Kroger Co*., 2021 U.S. Dist. LEXIS 11346, at *29 (S.D. Cal. Jan. 11, 2021). Thus, the court granted the plaintiff's "motion for summary judgment on Kroger's preemption defense." *Id.* This Court should reach the same conclusion.

### C.   Defendants' Third Affirmative Defense (Primary Jurisdiction)

Defendants' Third Affirmative Defense (Primary Jurisdiction) should be struck as a matter of law because the defense is inapplicable to this case. Primary jurisdiction

> applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

*United States v. W. Pac. R.R. Co*., 352 U.S. 59, 64 (1956) (citation omitted). Defendants' pleading simply "fails to articulate how the FDA's expertise is, or would be, required to assess Plaintiff's claims." *Hawkins v. Kroger Co*., 2019 U.S. Dist. LEXIS 59249, at *11-12 (S.D. Cal. Apr. 4, 2019).

9

Moreover, the defense also fails as a matter of law, as recognized by the Ninth circuit in *Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015). In *Reid*, a similar action in which plaintiff challenged a "No Trans Fat" labeling statement and brought a UCL claim predicated on a violation of California's Sherman Law, the Ninth Circuit declined to invoke the primary jurisdiction doctrine because

> there is no indication that the FDA is contemplating authorizing "No Trans Fat" statements. The issue that this case ultimately turns on is whether a reasonable consumer would be misled by McNeil's marketing, which the district courts have reasonably concluded they are competent to address in similar cases.

*Reid*, 780 F.3d at 967; *see also Hawkins*, 906 F.3d at 771 ("*Reid* squarely controls here."); *Hawkins v. Kroger Co.*, 2019 U.S. Dist. LEXIS 205496, at \*6 (S.D. Cal. Nov. 25, 2019) ("The affirmative defense of primary jurisdiction is, however, stricken as the court sees no circumstance where it need apply in this case.").

**D**.     **Defendants' Fifth Affirmative Defense (Safe Harbor)**

Again, Defendants provide a one-line sentence asserting Plaintiffs' claims are "barred by the safe harbor doctrine." Answer at 20. Without providing the underlying legal or factual bases, Plaintiff cannot ascertain the grounds for Defendants' affirmative defense and is thus deprived of fair notice. *See*, *e.g.*, *Perez*, 2012 U.S. Dist. LEXIS 41080, at \*35-38 (striking affirmative defenses where defendants failed to set forth the factual bases for their defenses); *Barnes v. AT&T Pension Benefit Plan*, 718 F. Supp. 2d 1167, 1171-73 (N.D. Cal. 2010) (same); *Qarbon.com Inc. v. eHelp Corp.,* 315 F. Supp. 2d 1046, 1049-50 (N.D. Cal. 2004) ("A reference to a doctrine, like a reference to statutory provisions, is insufficient notice.").

Plaintiffs can only guess that Defendants argument centers on the FDA's Final Determination and § 754 of the Consolidated Appropriations Act of 2016 ("CAA"), creating  a "safe harbor." But this argument would be meritless. Here, all of Plaintiff's claims relate to *labeling* statements made on the packaging of Ortega, so the FDA's decision to ban PHO has no bearing on these claims.

Further, a "safe harbor exists only where conduct is expressly permitted, not merely because conduct is not expressly prohibited." *Jordan v. Paul Fin., LLC*, 745 F. Supp. 2d 1084, 1099 (N.D. Cal. 2010). The safe harbor rule only prevents a plaintiff from "'plead[ing] around' an 'absolute bar to relief.'" *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 720 (2001) (citation omitted).

10

*Silva et al. v. B&G Foods Inc. et al.,* Case No. 4:20-cv-137-JST
PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

The FDA's Final Determination declared PHOs "not GRAS for any use in human food" and set a compliance date, after which the FDA would begin enforcement. 80 Fed. Reg 34650, 34651 (June 17, 2015). The Final Determination did not address trans fat labeling claims at all. Thus, it has no bearing on Plaintiffs' labeling claims here.

To the extent Defendants' argue that their use of a "0g Trans Fat Per Serving!" claim on a product containing trans fat was legal, they are wrong. As noted above,

> In *Reid*, the Ninth Circuit held that § 101.13(i)(3) does not "authorize" a "No Trans Fat" claim on the label of a food product, and therefore the plaintiff's UCL claims based on the "No Trans Fat" label were not preempted by federal law. 780 F.3d at 963. The court reasoned (1) "[a] nutrient content claim *fails* [under §101.13(i)(3)] if it is "false or misleading in any respect" and (2) "[b]ecause [the product] contain[ed] some trans fat (between 0 and 0.5 grams per serving), its 'No Trans Fat' claim [was] misleading in at least one respect." *Id*. at 962 (emphasis added). The Ninth Circuit rejected the district court's finding that the "No Trans Fat" label was not misleading. *Id*. at 963.
>
> In this case, the Ninth Circuit interpreted *Reid* to hold (1) "the statement 'No Trans Fat' was *not allowed* outside of the Nutrition Facts Panel since the product did contain trans fat," and (2) "under the regulations, [the 'No Trans Fat' claim] could *only* be made if it did 'not in any way implicitly characterize the level of the nutrient in the food and [was] not false or misleading in any respect.'" *Hawkins*, 906 F.3d at 770 (emphasis added). Like in *Reid*, the *Hawkins* court held that Plaintiff's labeling claims under the UCL were not preempted because the "0g Trans Fat" label was not "authorized" by FDA regulations. *Id*. at 772.

*Hawkins*, 2021 U.S. Dist. LEXIS 11346, at *16-17.

Thus, the challenged representation was "not authorized by FDA regulations," *Hawkins*, 2021 U.S. Dist. LEXIS 11346, at *16, and no safe harbor protects Defendants. *See also Hawkins v. Kroger Co*., 906 F.3d 763, 771 (9th Cir. 2018) ("just as the regulations do not authorize a 'no trans fat' claim, they also do not authorize a 'zero trans fat' claim").

Rather, the challenged conduct is illegal. As Judge Miller held,

> 21 C.F.R. § 101.62(a)(1)-(2) provides that claims about the level of fat may "only" be made on the label if (1) the claim uses one of the terms defined in the regulations, and (2) the claim is not false or misleading. Here, the claim "0g Trans Fat" is not defined in the regulations, and there is no genuine dispute the [products] contain some trans fat.

*Hawkins*, 2021 U.S. Dist. LEXIS 11346, at *18. Thus, Defendants' "'0g Trans Fat' label violated 21 C.F.R. §§ 101.62(a)(1)-(2) and 101.13(i)(3)." *Hawkins*, 2021 U.S. Dist. LEXIS 11346, at *18. Therefore, this defense fails as a matter of law.

### E.  Defendants' Sixth Affirmative Defense (Standing)

Defendants' Sixth Affirmative Defense (Standing) should also be struck because it is not an actual affirmative defense. "Because a plaintiff must plead and ultimately prove standing, lack of standing is not an affirmative defense under federal law." *Fishman v. Tiger Nat. Gas Inc.*, 2018 U.S. Dist. LEXIS 159425, at *15-16 (N.D. Cal. Sep. 18, 2018) (citations omitted); *Ansari*, 2012 U.S. Dist. LEXIS 128622 ("Plaintiff's alleged lack of standing is not an affirmative defense but rather a denial of Plaintiff's allegations regarding his standing to sue."). "Such a defense is merely rebuttal against the evidence presented by the plaintiff." *See Barnes*, 718 F. Supp. 2d at 1173. Therefore, this defense fails as a matter of law.

### F.  Defendants' Eleventh Affirmative Defense (Mootness)

Defendants' Eleventh Affirmative Defense ("Mootness") fails as a matter of law. "An issue is moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Chetal v. United States DOI*, 2019 U.S. Dist. LEXIS 46361, at *13 (N.D. Cal. Mar. 20, 2019); *see also In re Santa Fe Nat. Tobacco Co. Mktg. Litig.*, 288 F. Supp. 3d 1087, 1201 (D.N.M. 2017) (same). Here, Defendants provide no facts supporting their contention that Plaintiffs lack a legally cognizable interest in the outcome of this action.

To the extent Defendants base this defense on the fact that the Ortega Taco Shells at issue no longer bear a "0g Trans Fat" claim on their label, the defense fails. "'If [a plaintiff] is entitled to collect damages in the event that it succeeds on the merits, the case does not become moot even though declaratory and injunctive relief are no longer of any use.'" *In re Zappos.com, Inc.*, 888 F.3d 1020, 1028 n.12 (9th Cir. 2018) (quoting *Z Channel Ltd. P'ship v. Home Box Office, Inc.*, 931 F.2d 1338, 1341 (9th Cir. 1991)). Such a label change does not address Plaintiffs' claims for restitution and damages.

### G.  Defendants' Twelfth Affirmative Defense (Champerty and Maintenance)

Defendants pleading for its Twelfth Affirmative Defense, in its entirety, reads: "Plaintiffs' claims were procured through champerty and maintenance." Answer at 21. First, this alleged doctrine has never been recognized under California law. *Abbott Ford, Inc. v. Superior Court*, 43 Cal. 3d 858, 885 n.26 (1987) ("California, however, has never adopted the common law doctrines of champerty and maintenance...") (citing *Estate of Cohen,* 66 Cal. App. 2d 450, 458 (1944); *Cain v. Burns,* 131 Cal.

12

*Silva et al. v. B&G Foods Inc. et al.,* Case No. 4:20-cv-137-JST
PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

App. 2d 439, 443 (1955); *Muller v. Muller*, 206 Cal. App. 2d 731, 733 (1962)). In the rare instance that the alleged defense is proposed, courts have struck such claims down. *Ho v. Sin*, 2018 U.S. Dist. LEXIS 227143, at *22 (C.D. Cal. Apr. 6, 2018) ("The Court is not aware of any authority supporting the idea that champerty is an affirmative defense . . . or that champerty applies to . . . plaintiff and/or counsel seeking attorney's fees and/or engaging in a contingency fee arrangement) (following *Nw. S.S. Co. v. Cochran*, 191 F. 146, 151 (9th Cir. 1911)).

## VI.  **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully ask that the Court grant this Motion in its entirety and enter partial judgment on the pleadings in Plaintiffs' favor.

DATED: March 11, 2021                                  Respectfully Submitted,

/s/Gregory S. Weston
Gregory S. Weston

**THE WESTON FIRM**
GREGORY S. WESTON
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:     (619) 798-2006
Facsimile:      (619) 247-4553

**Counsel for Plaintiffs**

13

*Silva et al. v. B&G Foods Inc. et al.,* Case No. 4:20-cv-137-JST
PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS