UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA SILVA, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>B&G FOODS, INC., et al.,<br><br>　　　　Defendants. | Case No. 20-cv-00137-JST<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Re: ECF No. 98 |

Before the Court is Plaintiffs' motion for class certification. ECF No. 98. The Court will deny the motion.

## I.   BACKGROUND

Plaintiffs Sabrina Silva and Nancy Schier bring this putative class action against Defendants B&G Foods, Inc. and B&G Foods North America, Inc. (collectively, "B&G") asserting claims under California's Consumer Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL"). They allege that B&G's Ortega taco shells contained partially hydrogenated oil, and that the packaging was misleading because it advertised "0g Trans Fat! per serving" on the front. Plaintiffs seek only damages, and not injunctive relief, because B&G removed both trans fat and the challenged label from Ortega taco shells in 2015.

Plaintiffs seek to certify the following class: "All citizens of California, Connecticut, the District of Columbia, Florida, Hawaii, Illinois, Massachusetts, Michigan, Missouri, Rhode Island, Vermont, and Washington, who purchased, between 1/1/2010 and 12/31/2016, for household or personal use, Ortega taco shell products containing partially hydrogenated oil in packaging bearing the labeling claim '0g Trans Fat!'" ECF No. 98 at 2.

## II. LEGAL STANDARD

To certify a class, a court must be satisfied, "after a rigorous analysis," that the plaintiffs meet the requirements of Rule 23 of the Federal Rules of Civil Procedure by a preponderance of the evidence. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664-65 (9th Cir. 2022) (en banc) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "[P]laintiffs must make two showings." *Id.* at 663. First, they must satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a):

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Second, they "must show that the class fits into one of three categories" under Rule 23(b). *Olean*, 31 F.4th at 663. Plaintiffs invoke Rule 23(b)(3), which requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). Thus, for example, "[i]n determining whether the 'common question' prerequisite is met, a district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean*, 31 F.4th at 666-67 (emphasis in original).

## III. DISCUSSION

B&G raises several challenges to adequacy under Rule 23(a) and predominance under Rule 23(b)(3). The Court reaches only one argument that it finds dispositive: that Plaintiffs have not met their burden of showing that common issues predominate over individualized issues regarding

injury to class members.

The Ninth Circuit has recently rejected the "argument that Rule 23 does not permit the certification of a class that potentially includes more than a de minimis number of uninjured class members." *Olean*, 31 F.4th at 669. But Plaintiffs are incorrect when they argue that, as long as at least one named plaintiff has suffered an injury, the Court need not consider whether absent class members have also been injured. To the contrary, "[w]hen individualized questions relate to the injury status of class members, Rule 23(b)(3) requires that the court determine whether individualized inquiries about such matters would predominate over common questions." *Id.* at 668 & n.12. Thus, for example, the Ninth Circuit has affirmed the denial of class certification on predominance grounds where a challenged employment policy "either did not apply or did not cause an injury to many employees," and the plaintiff was "unable to provide a common method of proving the fact of injury and any liability." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 726, 732 (9th Cir. 2020).

Plaintiffs' claimed injury is that they would not have purchased the products if not for the allegedly misleading label, and their damages model is based on the proposition that every member of the class suffered the same injury – i.e., that had the label not included "0g Trans Fat! per serving," each class member would not have purchased the products and is therefore entitled to a refund of the full purchase price they paid. However, Plaintiffs have presented no evidence that this injury is capable of common proof. They rely on the testimony of the two individual named plaintiffs that they themselves would not have purchased the products, but such individualized testimony is not the type of common evidence that "each class member could have relied on . . . if he or she had brought an individual action." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455 (2016).

Nor do Plaintiffs' expert reports demonstrate that the asserted economic injury can be proven on a classwide basis. Dr. Nathan Wong, a medical doctor, opines on the health hazards of consuming trans fat and concludes, for example, that based on B&G's sales and the amount of trans fat in each serving of taco shells, B&G's conduct likely caused the preventable death of "about 17.25 Americans" from heart disease. ECF No. 98-2 at 18 (¶ 43). But this says nothing

about whether consumers would or would not have purchased the products if the front of the packaging did not advertise "0g Trans Fat! per serving." Similarly, Dr. Robert Bowen, an accounting professor, calculates damages and prejudgment interest based on B&G's sales numbers, but his model is based on the "understand[ing] that Plaintiffs seek damages under a 'full restitution' model, which is based on the amount of money [B&G] received from the sale of the taco shells at issue as calculated from B&G's sales figures." *Id.* at 348 (¶ 5). He does not opine on whether Plaintiffs' damages model is correct, or whether Plaintiffs are able to demonstrate injury on a classwide basis.

Likewise, B&G's statements in federal securities filings that the "food industry is subject to consumer concerns" about the health implications of various substances, including "trans fatty acids," might be some evidence of B&G's awareness of public concern over the use of trans fat in food products. *E.g.*, ECF No. 98-1 at 11. But they do not demonstrate that any person suffered the economic harm asserted by Plaintiffs, let alone whether that question is capable of resolution by common proof.

Plaintiffs' lack of evidence is especially problematic in light of Defendants' survey evidence – the methodology of which Plaintiffs do not challenge, and the results of which Plaintiffs do not rebut – finding no statistical difference in the proportion of consumers who would be likely to purchase Ortega taco shells with "0g Trans Fat! per serving" on the label as compared to the same packaging without that statement. ECF No. 106-9 ¶ 56-58. The survey, which was completed only by individuals who had purchased Ortega taco shells since the beginning of the class period, *id.* ¶ 50, found that the vast majority of consumers – approximately 85% – would definitely or probably buy the taco shells with or without the "0g Trans Fat! per serving" statement, *id.* ¶ 57. It further found "no support that including the '0g Trans Fat! per serving' statement on the package increased a consumer's willingness to pay more, since when the statement was removed[,] the price respondents were willing to pay increased by 2%." *Id.* ¶ 61 (emphasis omitted).

Given this evidence, and the lack of any competing evidence by Plaintiffs to dispute the survey's findings, it is implausible to conclude that B&G's use of the "0g Trans Fat! per serving"

1   label caused every class member to purchase taco shells that they would not otherwise have
2   purchased.  Plaintiffs present no mechanism for determining which class members suffered the
3   economic injury asserted by the two named plaintiffs and which have not.  Because they have
4   failed "to provide a common method of proving the fact of injury," Plaintiffs "cannot show that
5   questions of law or fact common to class members predominate."  *Castillo*, 980 F.3d at 732.

6   Plaintiffs cite authority for the proposition that materiality and reliance under the UCL and
7   CLRA can be established by classwide proof because they depend on an objective reasonable
8   consumer standard.  *E.g.*, *Testone v. Barlean's Organic Oils, LLC*, No. 19-cv-169 JLS (BGS),
9   2021 WL 4438391, at *9 (S.D. Cal. Sept. 28, 2021).  But those are different questions from
10  whether class members suffered the economic injury that forms the basis of Plaintiffs' claims.
11  Uninjured class members cannot recover individual damages, even if there has been a statutory
12  violation.  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207-08 (2021); *see also id.* at 2205
13  ("Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may
14  sue that private defendant over that violation in federal court." (emphasis in original)).  The
15  alleged concrete harm in this case is that class members would not have purchased the products if
16  they did not contain a "0g Trans Fat! per serving" label on the front of the packaging.  Even if
17  materiality and reliance could be established on a classwide basis, the record in this case suggests
18  that individualized questions over whether class members suffered concrete harm would
19  overwhelm common questions regarding whether there was a statutory violation.

20  In reaching this determination, the Court does not suggest that questions regarding injury
21  can never be resolved on a classwide basis.  To the contrary, other courts have determined that
22  they can, or that any individualized questions do not predominate over common ones.  *E.g.*, *In re*
23  *JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, No. 19-md-02913-WHO, 2022 WL
24  2343268, at *37 (N.D. Cal. June 28, 2022) ("Plaintiffs have plausibly alleged and for purposes of
25  this motion offer (contested) expert evidence showing that had JLI not misrepresented its product
26  and omitted material information, consumers would have paid less for JUUL products or have
27  chosen different nicotine-containing products."); *Utne v. Home Depot U.S.A., Inc.*, No. 16-cv-
28  01854-RS, 2022 WL 1443338, at *8 (N.D. Cal. May 6, 2022) (concluding that "individualized

inquiries into standing do not predominate over common questions" where a "survey indicates that a small percentage of the class" did not suffer injury). And Defendants acknowledge that survey evidence is capable of showing how consumers respond, or are likely to have responded, to allegedly misleading statements or omissions on a product label. ECF No. 106 at 15. But Plaintiffs have failed to put forth any evidence in this case – survey or otherwise – by which economic injury could be determined by common proof, nor have they presented any evidence to rebut Defendants' expert report showing that the vast majority of class members more likely than not suffered no economic harm.

Although another court certified a class in a similar case challenging a "0g Trans Fat" label on breadcrumbs, that court does not appear to have considered whether individualized inquiries regarding economic harm would preclude certification. *Hawkins v. Kroger Co.*, 337 F.R.D. 518 (2020). When considering whether the plaintiffs proposed an adequate damages model, that court did conclude, based on the plaintiffs' expert reports describing the dangers of trans fat, that "it is reasonable to find at this stage in the litigation that Plaintiff has shown that any value she obtained by consuming the breadcrumbs was erased when she found out they contained trans fat, and that any value class members received will be erased when they find out the same." *Id.* at 542. However, there appears to have been no evidence in that case suggesting that any number of class members, let alone the substantial proportion at issue here, did not suffer economic harm because they would have purchased the product regardless of the label. Based on the evidence presented in this case, Plaintiffs' have not plausibly shown that the injury status of class members can be demonstrated on a classwide basis.

## CONCLUSION

In short, Plaintiffs have not met their burden of showing that they satisfy Rule 23(b)(3) by a preponderance of the evidence. Accordingly, their motion for class certification is denied.

The parties shall appear for a case management conference on November 1, 2022, at

/ / /

/ / /

/ / /

6

2:00 p.m., to discuss a case schedule for resolving Plaintiffs' individual claims.  A joint case management statement is due by October 25, 2022.

**IT IS SO ORDERED.**

Dated:  August 26, 2022



_____
JON S. TIGAR
United States District Judge