UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA SILVA, et al.,<br><br>   Plaintiffs,<br><br> v.<br><br>B&G FOODS, INC., et al.,<br><br>   Defendants. | Case No. 20-cv-00137-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION TO EXCLUDE PALMATIER TESTIMONY**<br><br>Re: ECF Nos. 134, 136 |

Before the Court are Plaintiffs' motion for partial summary judgment, ECF No. 134, and Plaintiffs' motion to exclude the expert report and testimony of Dr. Robert Palmatier, ECF No. 136. The Court will grant both motions in part and deny them in part.

I. **BACKGROUND**

Plaintiffs Sabrina Silva and Nancy Schier brought this case as a putative class action against Defendants B&G Foods, Inc. and B&G Foods North America, Inc. (collectively, "B&G"). They allege that B&G's Ortega taco shells contained partially hydrogenated oil ("PHO"), and that the front of the packaging misleadingly advertised "0g Trans Fat! per serving" in violation of California's Unfair Competition Law ("UCL") and Consumer Legal Remedies Act.

The Court denied B&G's motion for summary judgment, ECF No. 92, and granted Plaintiffs' motion for judgment on the pleadings in part and denied it in part, ECF No. 94. The Court also denied Plaintiffs' motion for class certification, ECF No. 118, leaving Plaintiffs' individual claims as the only active claims.

/ / /

/ / /

/ / /

## II. DISCUSSION

### A. Motion for summary judgment

#### 1. Unlawful UCL Claim

Plaintiffs seek summary judgment that B&G's "0g Trans Fat! per serving" representation violated 21 C.F.R. §§ 101.13 and 101.62, and that B&G is therefore liable under the unlawful prong of the UCL. It is not disputed that B&G's taco shell packaging contained a "0g Trans Fat! per serving" representation or that, until 2015, the taco shells contained approximately 0.1 gram of trans fat per taco shell, or approximately 0.2 gram of trans fat per serving. ECF No. 134-1 at 5, 8 (labeling produced by B&G during discovery, showing a serving size of two shells); ECF No. 65-1 ¶ 4 (declaration of B&G Brand Director, stating that frying corn tortillas in PHO "resulted in approximately 0.1 gram of trans fat per taco shell"); *id.* ¶ 6 (stating that "[b]y June 2015," B&G changed the type of oil used to fry taco shells to "high oleic canola oil, instead of PHOs"). As this Court previously explained, B&G's labeling therefore violated 21 C.F.R. §§ 101.13 and 101.62. ECF No. 94 at 2–3 (citing *Hawkins v. Kroger Co.*, 906 F.3d 763, 770–72 (9th Cir. 2018)).

The Court denied Plaintiffs' motion for judgment on the pleadings on this question "[b]ecause the pleadings do not establish that the taco shells contained PHO." ECF No. 94 at 3. At summary judgment, however, the Court considers evidence outside the pleadings. B&G's own evidence establishes a violation of 21 C.F.R. §§ 101.13 and 101.62, and the Court finds no genuine dispute of material fact on this question.

However, the Court cannot enter summary judgment for Plaintiffs on the question of whether B&G is liable under the UCL. As the Court has previously held, however, "regardless of the predicate basis for a UCL claim, 'California law . . . requires causation – namely, that the plaintiff relied on the misrepresentation on the label.'" ECF No. 94 at 2 n.2 (quoting *Hawkins v. Kroger Co.*, 906 F.3d 763, 768 (9th Cir. 2018)). Whether Plaintiffs relied on the "0g Trans Fat! per serving" representation is a disputed question of fact. ECF No. 92 at 2–3. For its part, B&G continues to argue that Plaintiffs lack standing, but the disputed questions over reliance preclude summary judgment on that question. In addition, B&G's argument that Plaintiffs "are not entitled to a full refund" because "they received 'some value from' their purchases addresses a question of

damages, not one of standing." *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 530–31 (N.D. Cal. 2018). To the extent B&G argues that Plaintiffs suffered no injury, it is well-settled that a person who "would not have bought the product but for the [alleged] misrepresentation" has suffered economic injury. *Hawkins*, 906 F.3d at 768 (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 330 (2011)). B&G's request to file a second summary judgment motion on lack of standing or injury is denied.

The Court also cannot conclude that Plaintiffs' claims are untimely as a matter of law. The Court previously held that there is "a triable issue as to whether the delayed discovery rule applies to render Plaintiffs' claims timely," and the Court also "rejected B&G's argument that the discovery rule 'does not apply to claims brought under the "unlawful" prong of the UCL.'" ECF No. 92 at 3–4 & 4 n.1 (quoting ECF No. 65 at 23). B&G now argues that Plaintiffs' unlawful claims "derive from FDA technical labeling requirements, not whether the product contained trans [sic] amounts of trans fat eight years ago." ECF No. 143 at 23. But that is incorrect. Plaintiffs would know that the labels are unlawful only if they knew that the product actually contained trans fat—a question the Court has already determined cannot be resolved at summary judgment. ECF No. 92 at 3–6. B&G's request to bring a second summary judgment motion on timeliness is also denied.[1]

### 2. Affirmative Defenses

Plaintiffs seek summary judgment on six of B&G's affirmative defenses: "legally frivolous," unclean hands, accord and satisfaction, statute of limitations, laches, and failure to mitigate damages. In response, B&G withdrew its accord and satisfaction defense, and the Court therefore grants as unopposed Plaintiffs' motion as to that defense.

The Court grants Plaintiffs' motion as to the legally frivolous defense. B&G has cited no

---

[1] The Court does not reach the question of when the statute of limitations stopped being tolled by *Walker v. B&G Foods, Inc.*, No. 15-cv-3772, a previous putative class action filed by Plaintiffs' counsel that challenged the same conduct by B&G. However, should this issue require resolution later in this case, the Court reminds B&G's counsel that, under Ninth Circuit Rule 36-3, "[u]npublished dispositions and orders of [the Ninth Circuit Court of Appeals] issued before January 1, 2007 may not be cited to the courts of this circuit" except in circumstances not present here. *See* ECF No. 143 at 24 (citing *Card v. Duker*, 122 F. App'x 347 (9th Cir. 2005)).

3

1  authority that this is a valid affirmative defense, and it argues that Plaintiffs' claims are frivolous
2  because Plaintiffs lack standing and "have failed to adduce any evidence of injury." ECF No. 143
3  at 26. However, these are issues on which Plaintiffs bear the burden of proof and are not proper
4  affirmative defenses. ECF No. 94 at 4 (reaching same conclusion as to asserted affirmative
5  defenses of failure to state a claim and lack of standing); *see also Thompson v. United States*
6  *Bakery, Inc.*, No. 2:20-CV-00102-SAB, 2020 WL 7038591, at *5 (E.D. Wash. Nov. 30, 2020)
7  (striking affirmative defense of failure to state a claim because that "argument should be raised in
8  a motion, not as an affirmative defense").

9  Plaintiffs' motion is denied as to statute of limitations and laches. As discussed above,
10 whether Plaintiffs' claims are timely depends on disputed issues of fact that cannot be resolved at
11 summary judgment.

12 The motion is also denied as to failure to mitigate damages. Plaintiffs concede that the
13 failure to mitigate defense is relevant to damages, which remain to be resolved in this case, and
14 they do not present any other basis for granting summary judgment on that defense.

15 Finally, the motion is granted in part and denied in part as to unclean hands. B&G offers
16 no response to Plaintiffs' reliance on *Rheumatology Diagnostics Laboratory, Inc v. Aetna, Inc.*, in
17 which the court concluded that an unclean hands defense "cannot bar plaintiffs' UCL claims" but
18 may still guide the court's discretion when fashioning remedies. No. 12-cv-05847-WHO, 2015
19 WL 3826713, at *7–8 (N.D. Cal. June 19, 2015). In the absence of any contrary authority, the
20 Court reaches the same result here. Plaintiffs' motion is granted to the extent that the unclean
21 hands defense is asserted as a complete defense to Plaintiffs' UCL claims but denied to the extent
22 the defense is asserted against Plaintiffs' remedies.

### B. Motion to exclude Palmatier testimony

24 Plaintiffs seek to exclude the testimony of Dr. Robert Palmatier in its entirety. Palmatier is
25 a marketing expert who opines, based in part on a consumer survey he conducted, that "[h]aving
26 '0g Trans Fat! per serving' on the front of the label did not significantly affect the sales volume or
27 price of the taco shells," and that Plaintiffs' expert declarations regarding the dangers of trans fat
28 and how to calculate damages based on a full-refund model "do not contradict [his] research and

conclusions." ECF No. 107 ¶¶ 1, 6–8. The Court considers the motion in the context of Plaintiffs' individual claims, which are the only claims that remain in this case. Thus, for example, whether a full-refund model of damages is appropriate for the entire putative class is no longer relevant.

The Court grants the motion to exclude Palmatier's testimony regarding whether Silva and Schier are entitled to a full refund if they prevail on their claims or whether Plaintiffs suffered any injury. B&G remains free to argue that Plaintiffs' deposition testimony contradicts their contention that they obtained no benefits from the taco shells they purchased, but this is not a proper subject of expert testimony, let alone from a marketing expert like Palmatier. In addition, whether other members of the putative class might not have suffered economic injury is not relevant to the question of whether Silva and Schier in particular suffered damages and, if so, to what extent.

Palmatier's testimony is also not relevant to whether the reasonable consumer test has been violated. Under that test, which governs UCL and CLRA claims, courts ask whether the challenged advertising "is either actually misleading or . . . has the capacity, likelihood or tendency to deceive or confuse the public." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)). Survey evidence may be relevant to this question when it "provides insight into how respondents understood Defendants' labels" or "the impact of this understanding on consumers' ultimate purchasing decisions." *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1030 (C.D. Cal. 2018). However, Palmatier's survey does not address either of these questions. The survey did not ask how consumers interpreted the "0g Trans Fat! per serving" statement, nor whether their understanding of that statement impacted their buying decisions. Instead, it measured only the effect that the presence or absence of the statement "would have on demand and price." ECF No. 107 ¶ 36. That is, the survey is evidence that a "0g Trans Fat! per serving" label is unlikely to influence a majority of consumers, but that says nothing about whether the statement itself is misleading or otherwise fraudulent.

Similarly, whether other consumers might or might not have been influenced by the "0g Trans Fat! per serving" representation is not relevant to whether individual plaintiffs Silva and

5

Schier actually relied on the statements to make their purchases. However, such evidence would be relevant if Plaintiffs attempt to prove reliance based on materiality. "[I]f 'a reasonable [person] would attach importance to [a misrepresentation's] existence or nonexistence in determining [their] choice of action in the transaction in question'"—the question that Palmatier's survey purports to answer—then the "misrepresentation is judged to be 'material,'" thereby giving rise to "a presumption, or at least an inference, of reliance." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326–27 (2009) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 977 (1997)).

If it is relevant, Palmatier's survey evidence is sufficiently reliable to be admitted. First, Plaintiffs argue that Palmatier's methodology, which they characterize as "momentarily flash[ing]" "slightly different labels" to "a passel of Internet randos," is "a joke and a sham," but they cite to no competing expert testimony or case law to support that assertion.[2] ECF No. 136 at 14 (emphasis omitted). Plaintiffs have introduced no evidence, for example, to counter Palmatier's opinions that "[c]onducting surveys like [his] is a common method of doing market research" and that his survey design "follow[e]d generally accepted principles for the design of surveys to be used as evidence in litigation." ECF No. 107 ¶¶ 36, 37. Nor have Plaintiffs submitted any evidence or authority that showing respondents images for at least 30 seconds, as Palmatier's survey did, *id.* ¶ 53, is unreliable methodology. Second, Palmatier does not opine on medical issues outside of his expertise—for example, whether consuming trans fat is harmful— and, as a marketing expert, he is qualified to opine on whether Plaintiffs' experts "consider or rely upon the accepted methodologies or information normally viewed by marketing professionals" or whether their testimony is "based on any validated techniques for analyzing consumer demand."[3] *Id.* ¶¶ 64, 65. Third, questions regarding a survey's "methodology, survey design, reliability, the

---

[2] Plaintiffs' reply brief cites *Stone Brewing Co., LLC v. MillerCoors LLC*, No. 18-CV-0331-BEN (MDD), 2022 WL 4596570, at *1 (S.D. Cal. Aug. 4, 2022), where the court wrote, "The expert testimony of Dr. Palmatier was based on seriously flawed survey methodology, including the way the Keystone Light can was presented to survey subjects (*i.e.*, not in a manner that consumers would normally encounter the product in the marketplace)." However, Plaintiffs draw no parallels between the surveys at issue in that case and this one. Moreover, the court in *Stone Brewing* appears to have admitted Palmatier's testimony, which is the question at issue here.

[3] The Court has already excluded, as outside of his expertise, Palmatier's testimony regarding Plaintiffs' injuries or whether they are entitled to a full refund if they prevail on their claims.

experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001). For example, the Ninth Circuit has "made clear that 'technical inadequacies' in a survey, 'including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility.'" *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) (quoting *Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir. 1988)). Plaintiffs are free to raise these issues at trial, including their argument that Palmatier's survey results differ from the results of other surveys from the academic literature, but they are not bases for excluding the evidence.

## CONCLUSION

Consistent with the above discussion, Plaintiffs' motion for partial summary judgment is granted in part and denied in part. The motion is granted on the question of whether B&G's labeling violated 21 C.F.R. §§ 101.13 and 101.62; as to B&G's affirmative defenses of legally frivolous and accord and satisfaction; and as to B&G's unclean hands affirmative defense to the extent that it is asserted as a complete defense to Plaintiffs' UCL claims. The motion is otherwise denied.

Plaintiffs' motion to exclude the testimony of Robert Palmatier is also granted in part and denied in part. The motion is granted unless Plaintiffs intend to argue reliance based on materiality, in which case portions of Palmatier's testimony are admissible. Within seven days of the date of this order, Plaintiffs shall notify B&G whether they intend to argue that Plaintiffs' reliance can be established by materiality or if they intend to argue only actual reliance.

**IT IS SO ORDERED.**

Dated: July 24, 2023

_____
JON S. TIGAR
United States District Judge