**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:    (619) 798-2006
Facsimile:     (619) 343-2789

**Counsel for Plaintiffs**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SABRINA SILVA and NANCY SCHIER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>B&G FOODS, INC. and B&G FOODS NORTH AMERICA, INC.,<br><br>Defendants. | Case No: 4:20-cv-137-JST<br><br>**PLAINTIFFS' MOTION *IN LIMINE* NO. 4 TO EXCLUDE EVIDENCE AND TESTIMONY PURPORTING TO SHOW THAT DEFENDANTS COMPLIED WITH FDA REGULATIONS AND REGARDING THE PURPORTED SAFETY OF TRANS FAT CONSUMPTION**<br><br>Judge: The Honorable Jon S. Tigar<br>Trial Date: October 10, 2023<br>Time: 10:00 a.m.<br>Location: Courtroom 6 |

## I. Introduction

Plaintiffs Sabrina Silva and Nancy Schier respectfully move the Court *in limine* for an order excluding all evidence and testimony purporting to show that Defendants complied with all relevant regulations with respect to the claims in this action.

Throughout this action, Defendants have repeatedly asserted that they complied with all FDA regulations, and that the false "0g Trans Fat Per Serving!" claim that they placed on the packaging of Ortega, outside of the Nutrition Facts panel, was mandated by the FDA. In its order partially granting Plaintiffs' motion for summary judgment, the Court held "B&G's labeling . . . violated 21 C.F.R. §§ 101.13 and 101.62." Doc. 153 at 2. Plaintiffs move the Court for an order excluding evidence, testimony, and argument purporting to show that Defendants complied with all relevant labeling regulations as unduly prejudicial and likely to confuse the jury.

Moreover, throughout this action, Defendants have repeatedly asserted that trans fat consumption is safe in low levels and that the amount of trans fat in Ortega was insufficient to cause harm to the health of consumers. However, neither Defendants, nor their counsel, nor their expert possess the requisite knowledge and experience to provide expert opinion on such issues of causation. Thus, the Court should exclude such testimony and argument pursuant to Fed. R. Evid. 701.

## II. Legal Standard

The applicable legal standard is described in Plaintiffs' Motion in Limine No. 1.

## III. The Court Should Exclude All Evidence, and Argument Purporting to Show that (1) Defendants Complied With All Relevant FDA Regulations and (2) Using the Phrase "Technical Violation" at Trial.

### A. Defendants' Assertions that They Complied With Relevant FDA Labeling Regulations Is a Misstatement of Law Which Is Likely to Confuse the Jury.

Defendants have repeatedly claimed that they complied with all relevant FDA regulations with respect to the claims at issue in this action. For example:

- "The Nutrition Panel stated '0 grams trans fat.' (Id.) So did the front label. (Id.) Plaintiff does not dispute that this labeling complied with FDA regulations, which require food manufacturers to round down to zero trace amounts of trans fat under 0.5 grams. 21 C.F.R. § 101.9(c)(2)(ii)." Doc. 16 at 3.

- "B&G Foods' taco shells contained less than 0.5 grams of trans fat per serving (two taco shells).

1

*Silva et al. v. B&G Foods Inc. et al.*, Case No. 4:20-cv-137-JST
PLAINTIFFS' MOTION *IN LIMINE* RE DEFENDANTS' PURPORTED COMPLIANCE WITH FDA REGULATIONS

(Compl., App'x A.) The Nutrition Panel stated '0 grams trans fat.' (Id.) So did the front label. (Id.) Plaintiff does not dispute that this labeling complied with FDA regulations, which require food manufacturers to round down to zero trace amounts of trans fat under 0.5 grams. 21 C.F.R. § 101.9(c)(2)(ii)." Doc. 22 at 4.

- "the FDA-mandated language on the front of the box" Doc. 65 at 1.
- "the legal theory that a supposed violation of technical labeling regulations constitutes a *per se* violation of the 'unlawful prong' of the UCL." Doc. 143 at 1.
- "Plaintiffs' legal theory is that this supposed violation of federal regulations constituted a *per se* violation of the 'unlawful prong' of the UCL." Doc. 143 at 17.

Plaintiffs respectfully move the Court for an order excluding all evidence, testimony, and argument purporting to show that Defendants complied with all relevant labeling FDA regulations in this action as unduly prejudicial pursuant to Federal Rules of Evidence 403. Plaintiffs also move the Court for an order precluding Defendants from using the phrase "technical violation" at trial as unduly prejudicial and likely to confuse the jury, as all violations of FDA regulations are "technical."

While Defendants have repeatedly asserted that they complied with all relevant FDA labeling regulations in this action, this is a misstatement of the law. As the Court held in its order partially granting Plaintiffs' motion for summary judgment, "B&G's labeling . . . violated 21 C.F.R. §§ 101.13 and 101.62." Doc. 153 at 2. Such misstatements of law are not permitted at trial. In *United States v. Lacy*, the government sought "an order precluding Defendants' from introducing evidence or argument at trial about Section 230 of the Communications Decency Act of 1996 ('CDA') because courts have construed Section 230 to provide immunity from civil claims for websites that publish content created by third parties." *United States v. Lacey*, 2023 U.S. Dist. LEXIS 127359, at *16 (D. Ariz. July 24, 2023). The defendants countered "that they must be permitted to present evidence tending to negate unlawful intent, including by showing that Backpage.com's moderation and aggregation processes were driven by factors other than facilitating crime." *Id.* The court rejected the defendants' argument and granted the motion, holding:

> Defendants' reliance on Section 230 of the CDA for their immunity argument is a misstatement of the law. The trial court has previously analyzed whether the CDA applies to this case and found that the facts in the SI are "qualitatively different" than the Defendants' cited CDA cases. (Doc. 793 at 13). In so doing, the court opined that "[t]his case . . . does not concern civil liability, and the CDA has '*no effect*' on 'any other Federal criminal statute.'" (*Id.* citing 47 U.S.C. § 230(e)(1) (emphasis added)). **To date, no party has provided this Court with case precedent holding that the CDA immunizes criminal activity like that alleged here. It follows that a jury should not be told that the CDA does. To do so is a misstatement of law and will lead to jury**

2

*Silva et al. v. B&G Foods Inc. et al.*, Case No. 4:20-cv-137-JST
PLAINTIFFS' MOTION *IN LIMINE* RE DEFENDANTS' PURPORTED COMPLIANCE WITH FDA REGULATIONS

**confusion**.

*Lacey*, 2023 U.S. Dist. LEXIS 127359, at *16-17 (emphasis added).

Likewise, in *Equlla M. Bros. v. Bd. of Cty. Comm'rs of Okla. Cty.*, the plaintiff argued that it was "apparent from Defendant's Motion for Summary Judgment that he may shift all blame in this matter to Turn Key Health and the medical staff of OCDC and further opine that Defendant is not liable for such conduct" which was a "misstatement of the law that would confuse and mislead the jury." *Equlla M. Bros. v. Bd. of Cty. Comm'rs of Okla. Cty.*, 2023 U.S. Dist. LEXIS 112290, at *7-8 (W.D. Okla. June 29, 2023). The court agreed, holding, "[t]o the extent Plaintiff's Motion seeks to exclude any legally incorrect argument at trial, the Motion is GRANTED." *Equlla M. Bros. v. Bd. of Cty. Comm'rs of Okla. Cty.*, 2023 U.S. Dist. LEXIS 112290, at *8 (W.D. Okla. June 29, 2023). Here, too, Defendants should be precluded from misstating the law with respect to their regulatory violations at trial.

**B.   The Phrase "Technical Violation" Falsely Implies There Are Trivial and Unimportant Regulations Companies Should not Face Legal Liability for Violating.**

In addition to incorrectly claiming that their labeling practices complied with all relevant FDA labeling regulations, Defendants have repeatedly attempted to downplay the violations as merely "technical." For example,

- "Plaintiffs claim that using '0g trans fat per serving' on the front of the box was unlawful under the UCL because it is a technical violation of 21 C.F.R. § 101.13(i)(3)." Doc. 65 at 2.
- "Plaintiffs' claims that the labeling of the taco shells was a technical violation of 21 C.F.R. § 101.13(i)(3) accrued upon seeing the label with the supposed unlawful representation on it." Doc. 65 at 17.
- "Plaintiffs argue that they do not need to show any injury for their claim that the labels violated technical FDA labeling regulations." Doc. 106 at 5.
- "[T]heir motion is based on the legal theory that a supposed violation of technical labeling regulations constitutes a *per se* violation of the 'unlawful prong' of the UCL." Doc. 143 at 1.

Defendants should be precluded from referring to their labeling violations as merely "technical" pursuant to Federal Rule of Evidence 403 because the phrase "will lead to jury confusion." *Lacey*, 2023 U.S. Dist. LEXIS 127359, at *17. No FDA rule nor rule of California law states some violations are "technical." Either a labeling claim complies with the FDA's regulations, or it does not. Defendants should be precluded from using the phrase at trial. See *Lacey*, 2023 U.S. Dist. LEXIS 127359, at *16-17.

3

*Silva et al. v. B&G Foods Inc. et al.*, Case No. 4:20-cv-137-JST
Plaintiffs' Motion *In Limine* re Defendants' Purported Compliance With FDA Regulations

IV.  **The Court Should Preclude Defendants From (1) Introducing Evidence Relating to the Harm Trans Fat Consumption Causes and (2) Arguing or Testifying that the Amount of Trans Fat in Ortega Was "Trace" or Insufficient to Cause Harm to Consumers.**

Though Defendants failed to retain any medical or nutritional experts in this action, they have repeatedly asserted that there is no evidence that trans fat is harmful to health at the levels present in Ortega. For example:

- Plaintifffs "they do not allege any physical injury, much less one that could be caused by B&G Foods' taco shells." Doc. 16 at 15-16.

- "Even if they could show injury, Plaintiffs cannot allege that such injury was attributable to trans fat in taco shells. Plaintiffs do not allege that taco shells were the exclusive source of trans fat they have ever consumed." Doc. 16 at 18.

- "they do not allege any physical injury, much less one that could be caused by B&G Foods' taco shells" Doc. 22 at 17.

- "Plaintiffs' pleading is larded with allegations about the supposed health risks of trans fat." Doc. 22 at 19.

- "Even if they could show injury, Plaintiffs cannot allege that such "injury" was attributable to trans fat in taco shells." Doc. 22 at 19.

- "Plaintiffs argue that the FAC contains allegations that trans fats cause certain health conditions. But absent from the FAC is any allegation that Plaintiffs themselves have suffered any such health condition. Nor do Plaintiffs allege that the taco shells, as opposed to some other source of trans fat, were the actual cause of any hypothetical injury they might have suffered." Doc. 28 at 10.

- "Trans fat was an ingredient approved by the FDA. There is no evidence that trace levels of it cause any harm." Doc. 43 at 3.

- "After B&G Foods acquired Ortega, a scientific consensus emerged that regularly eating significant amounts of trans fats may cause health risks." Doc. 65 at 4.

- "These studies did not show that eating trace amounts of trans fat was bad in any way." Doc. 65 at 4.

As noted above, Defendants failed to retain any medical or nutritional experts in this action. Nonetheless, they have repeatedly argued that trans fat consumption is safe in low levels and that the amount of trans fat in Ortega was insufficient to cause harm to the health of consumers. Their claim that trans fat was approved by the FDA is also false, so too is the claim that scientific consensus about trans fat only "emerged" after their acquired Ortega.

4

*Silva et al. v. B&G Foods Inc. et al.*, Case No. 4:20-cv-137-JST
PLAINTIFFS' MOTION *IN LIMINE* RE DEFENDANTS' PURPORTED COMPLIANCE WITH FDA REGULATIONS

First, neither Defendants nor their counsel, nor their sole expert possess the requisite expert knowledge to opine on the harm that trans fat consumption causes, or whether the amount of trans fat in Ortega was sufficient to cause harm to consumers. Such lay testimony as to the scientific issues is improper. "Federal Rule of Evidence 701 states that non-expert-or lay-person-opinion testimony is limited to statements '(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" *Scolaro v. Vons Cos.*, 2019 U.S. Dist. LEXIS 221547, at *16 (D. Nev. Dec. 27, 2019) (quoting Fed. R. Evid. 701).

In *Lillie v. ManTech Int'l. Corp.*, the defendant moved "to exclude lay testimony from plaintiff and his wife regarding plaintiff's diagnosis of unspecified anxiety disorder and the causes of his alleged emotional distress." *Lillie v. ManTech Int'l. Corp.*, 2018 U.S. Dist. LEXIS 205355, at *14 (C.D. Cal. Dec. 3, 2018). The defendant argued that "because a lay witness' testimony must stem from the witness' perception, and cannot be based on scientific, technical, or other specialized knowledge within the scope of Rule 702, certain opinions about medical diagnoses and causation are outside the subject matter for lay witness." *Id.* The court noted that "Defendant is correct that Rule 701 has been used to bar lay witnesses from testifying as to their opinion on causation where such a determination would require the experience of an expert." *Id.* at *15 (citing *Boren v. Harrah's Entm't Inc.*, 2010 U.S. Dist. LEXIS 145231, 2010 WL 4340641, at *2 (D. Nev. Oct. 26, 2010) and *Hovsepian v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 13213900, at *10 (C.D. Cal. Jan. 12, 2011)). "Similarly, lay witness may not testify as to medical diagnoses." *Lillie*, 2018 U.S. Dist. LEXIS 205355, at *15 (citing *Tobeler v. Colvin*, 749 F.3d 830, 833 (9th Cir. 2014)). Thus, the court granted the defendants' motion "to the extent that defendant seeks to exclude medical opinions as to the causation of plaintiff's alleged emotional distress and any diagnoses." *Lillie*, 2018 U.S. Dist. LEXIS 205355, at *15. Here, too, Defendants and their counsel should be precluded from offering testimony as to the harm that trans fat consumption causes and as to whether the amount of trans fat in Ortega was harmful to consumers.

Second, the assertion that trans fat consumption is "safe" at the "trace" levels present in Ortega is contrary to the views of the FDA and the consensus among the medical and scientific communities. In 2013 and 2015 declaratory orders, the FDA determined PHOs, the source of the trans fat in Ortega, "are

5

*Silva et al. v. B&G Foods Inc. et al.*, Case No. 4:20-cv-137-JST
PLAINTIFFS' MOTION *IN LIMINE* RE DEFENDANTS' PURPORTED COMPLIANCE WITH FDA REGULATIONS

not generally recognized as safe (GRAS) for any use in food based on current scientific evidence establishing the health risks associated with the consumption of *trans* fat." *See* Tentative Determination Regarding Partially Hydrogenated Oils, 78 Fed. Reg. 67169, 67169 (Nov. 8, 2013); Final Determination Regarding Partially Hydrogenated Oils, 80 Fed. Reg. 34650, 34651 (June 15, 2015) ("PHOs are not GRAS for any use in human food.").

## V.    Conclusion

The Court should, respectfully, grant Plaintiffs' motion.

DATED: August 25, 2023                                   Respectfully Submitted,

/s/Gregory S. Weston
Gregory S. Weston

**Counsel for Plaintiffs**